IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DANIEL Z. CROWE; LAWRENCE K. PETERSON; and OREGON CIVIL LIBERTIES ATTORNEYS, an Oregon Nonprofit Corporation,<br><br>        Plaintiffs,<br><br>        v.<br><br>OREGON STATE BAR, a Public Corporation; OREGON STATE BAR BOARD OF GOVERNORS; VANESSA NORDYKE, President of the Oregon State Bar Board of Governors; CHRISTINE CONSTANTINO, President-elect of the Oregon State Bar Board of Governors; HELEN HIERSCHBIEL, Chief Executive Officer of the Oregon State Bar; KEITH PALEVSKY, Director of Finance and Operations of the Oregon State Bar; AMBER HOLLISTER, General Counsel for the Oregon State Bar,<br><br>        Defendants. | Case No. 3:18-cv-02139<br><br>**CIVIL RIGHTS COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**<br><br>42 U.S.C. § 1983 (Freedom of Speech)<br>42 U.S.C. § 1983 (Freedom of Association)<br>42 U.S.C. § 1988 (Attorney Fees) |

1.    This civil rights lawsuit seeks to protect the First and Fourteenth Amendment rights of Oregon attorneys who have been forced to join the Oregon State Bar ("OSB") and to pay for political advocacy by the OSB that they do not wish to support.

2.    The State of Oregon requires attorneys to join and pay fees to a bar association, the Oregon State Bar ("OSB"), to be allowed to practice law in the state. ORS 9.160, 9.191.

COMPLAINT – Page 1

3.    Under U.S. Supreme Court precedent, a mandatory bar association such as the OSB must implement safeguards to ensure that members' dues are used only for the narrow purpose of improving the quality of legal services through the regulation of attorneys – not for political advocacy. *See Keller v. State Bar of Cal.*, 496 U.S. 1 (1990).

4.    Supreme Court precedent also requires a mandatory association such as the OSB to fund its political advocacy with money paid by people who affirmatively consented to having their money used for that purpose. *See Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2486 (2018).

5.    The OSB, however, has not implemented procedures to ensure that members' mandatory fees are not used for political advocacy, and it has used mandatory fees to fund political speech without obtaining members' affirmative consent in advance.

6.    For example, the OSB used mandatory member fees to publish statements in the April 2018 issue of its *Bar Bulletin* that criticized President Donald Trump. Plaintiffs Daniel Crowe and Lawrence Peterson, who are Oregon attorneys, would not have chosen to fund that criticism but had no opportunity to prevent their mandatory dues from being used to pay for it.

7.    In addition, Oregon's statute requiring attorneys to become OSB members is unconstitutional because it violates attorneys' First Amendment right to freedom of association and is not necessary to ensure the quality of legal services and regulate attorneys.

8.    This lawsuit therefore asks this Court to declare Oregon's mandatory bar membership unconstitutional, or to order Defendants to adopt procedures to prevent members' mandatory fees from being used for political speech and other activities unrelated to improving the quality of legal services and regulating attorneys without the members' affirmative consent.

## JURISDICTION AND VENUE

9.      This action is brought under 42 U.S.C. §§ 1983 and 1988.

10.     This Court has subject matter jurisdiction over Plaintiffs' claims under 28 U.S.C. §§ 1331 and 1343.

11.     This Court has authority to grant declaratory and other relief under 28 U.S.C. §§ 2201 and 2202.

12.     Venue is appropriate under 28 U.S.C. § 1391 and LR 3-2 because a substantial part of the events giving rise to the claim occurred in this District, and because Defendants operate or do business in this judicial District.

13.     Divisional venue lies with the Portland Division as a substantial part of the events giving rise to the claim occurred within the Portland Division, Plaintiff Peterson resides in the Portland Division, and Plaintiff Oregon Civil Liberties Attorneys has its principal place of business in the Portland Division.

## PARTIES

14.     Plaintiff Daniel Z. Crowe is a citizen of the United States and resides in Marion County, Mt. Angel, Oregon. Plaintiff Crowe is a duly licensed attorney under the laws of Oregon and is a member of OSB because membership is a mandatory prerequisite to practice law in the State of Oregon under ORS 9.160.

15.     Plaintiff Crowe has paid annual dues to the OSB since approximately 2014.

16.     Plaintiff Lawrence K. Peterson is a citizen of the United States and resides in Clackamas County, Lake Oswego, Oregon. Plaintiff Peterson is a duly licensed attorney under the laws of Oregon and is a member of OSB because membership is a mandatory prerequisite to practice law in the State of Oregon under ORS 9.160.

17.     Plaintiff Peterson has paid annual dues to the OSB since 1984.

18.     Plaintiff Oregon Civil Liberties Attorneys ( "ORCLA") is a domestic nonprofit corporation with its principal place of business in Clackamas County, Lake Oswego, Oregon. All members of ORCLA are citizens of the United States, duly licensed attorneys under the laws of Oregon, and members of OSB because membership is a mandatory prerequisite to practice law in the State of Oregon pursuant to ORS 9.160.

19.     Defendant Oregon State Bar is a public corporation established under ORS 9.010.

20.     Defendant Oregon State Bar Board of Governors (the "Board") is charged with the executive functions of OSB and with "direct[ing] its power to the advancement of the science of jurisprudence and the improvement of the administration of justice." ORS 9.080(1). The Board has authority to "adopt, alter, amend and repeal bylaws and to adopt new bylaws containing provisions for the regulation and management of the affairs of the state bar not inconsistent with law." *Id.* The Board governs OSB, determines the general policies of OSB, approves OSB's annual budget, and appoints OSB's Executive Director. The Board is a final policy maker regarding how OSB functions.

21.     Defendant Vanessa Nordyke is President of the Board and, in that position, is responsible for creating and implementing procedural safeguards required to ensure member dues are used only for "chargeable" activities—meaning only those germane to improving the quality of legal services through the regulation of attorneys. Defendant Nordyke also participates in determining OSB positions on legislation and ballot measures as a member of both the Board and OSB's Legislative Committee. Defendant Nordyke is responsible for enforcing the laws requiring membership and funding of OSB as a prerequisite to practicing law in the State of

Oregon. Defendant Nordyke is implementing and enforcing the unconstitutional practices and policies complained of in this action, acting under the color of state law.

22.     Defendant Christine Constantino is President-elect of the Board and a member of the OSB's Budget and Finance Committee. The Budget and Finance Committee is tasked with overseeing the Board's financial operations, making recommendations to the Board regarding annual budgets and assessments, managing OSB's reserves and investments, receiving biennial audits, and providing guidance on long-range forecasts, operating expenses and capital purchases. Defendant Constantino is implementing and enforcing the unconstitutional practices and policies complained of in this action, acting under the color of state law.

23.     Defendant Helen Hierschbiel is the Chief Executive Officer and Chief Executive Director of OSB. In that position, appointed by and acting under the supervision of the Board, Defendant Hierschbiel implements, administers, and supervises OSB's operation and program activities, managing a staff of approximately 90 individuals and an $11 million annual budget. Defendant Hierschbiel is implementing and enforcing the unconstitutional practices and policies complained of in this action, acting under the color of state law.

24.     Defendant Keith Palevsky is OSB's Director of Finance and Operations and a member of OSB's Budget and Finance Committee. Defendant Palevsky is implementing and enforcing the unconstitutional practices and policies complained of in this action, acting under the color of state law.

25.     Defendant Amber Hollister is OSB's General Counsel and, in that position, is responsible for providing legal advice to the OSB and the Board. Defendant Hollister is implementing and enforcing the unconstitutional practices and policies complained of in this action, acting under the color of state law.

## FACTS

**OSB's Mandatory Membership and Fee Collection**

26.    Oregon law compels every attorney licensed in Oregon to join OSB in order to earn a living practicing law in the state. ORS 9.160.

27.    Oregon law authorizes OSB to charge annual membership fees to its mandatory members. ORS 9.191.

28.    As Oregon attorneys, Plaintiffs Crowe and Peterson, and Plaintiff ORCLA's members, are compelled to join OSB and to pay membership fees to Defendants as a condition of engaging in their profession. ORS 9.160, 9.191.

29.    Defendants enforce laws requiring membership in and funding of OSB as a prerequisite to practicing law in the State of Oregon. ORS 9.160, 9.191.

30.    Defendants act under color of state law when collecting, disbursing, and spending mandatory dues.

**OSB's Disbursement of Mandatory Fees**

31.    The OSB places the mandatory fees it collects into three separate funds: (1) a general fund, which provides funding for mandatory and discretionary services for members and the public; (2) a client security fund, which awards money to clients of Oregon attorneys who have lost money or property due to misappropriation or embezzlement by their lawyers; and (3) a diversity and inclusion department.

32.    In 2018, OSB disbursed mandatory fees in the following manner: client security fund (2%); diversity and inclusion (8%); loan repayment assistance program (2%); disciplinary counsel and client assistance office (34%); other regulatory programs: governance, general counsel, new lawyer monitoring (19%); and other bar programs and services (35%).

33.    In 2019, OSB has proposed to disburse mandatory fees in the following manner: client security fund (2%); diversity and inclusion (8%); loan repayment assistance program (2%); disciplinary counsel and client assistance office (34%); other regulatory programs: governance, general counsel, new lawyer monitoring (19%); and other bar programs and services (35%).

34.    Although OSB publishes this general information about its allocation of membership fees, it does not publish information about whether or how it determines whether a given allocation of funds was for purposes germane to improving the quality of legal services and regulating attorneys.

**OSB's Use of Mandatory Fees for Legislative and Policy Advocacy**

35.    OSB uses mandatory member fees to engage in legislative and policy advocacy in accordance with "Legislative Policy Guidelines" that were approved by the Board.

36.    OSB's Legislative Policy Guidelines state: "OSB's legislative or policy activities shall be limited to those reasonably related to any of the following subjects: regulating and disciplining lawyers; improving the function of the courts, including issues of judicial independence, fairness, efficacy and efficiency; making legal services available to society; regulating lawyer trust accounts; the education, ethics, competence, integrity and regulation of the legal profession; providing law improvement assistance to elected and appointed government officials; issues involving the structure and organization of federal, state and local courts in or affecting Oregon, issues involving rules of practice, procedure and evidence in federal, state or local court in or affecting Oregon; or issues involving the duties and functions of judges and lawyers in federal, state and local courts in or affecting Oregon."

37.    OSB's Legislative Policy Guidelines do not distinguish between germane and non-germane activities.

38.     OSB's Legislative Policy Guidelines do not articulate what, if any, tests or procedures are in place to ensure OSB's classification of expenditures as germane is proper.

39.     OSB's legislative and policy activities include political speech.

40.     Through its legislative and policy activities, OSB expends member dues for political and ideological activities that are not germane to OSB's purpose.

**The April 2018 *Bar Bulletin***

41.     The OSB uses member dues to publish a periodical called the *Bar Bulletin*.

42.     The April 2018 issue of the *Bar Bulletin* included, on opposing pages, two statements on alleged "white nationalism," one of which specifically criticized President Donald Trump.

43.     A true and accurate copy of these two statements is attached as Exhibit A and incorporated herein by reference.

44.     These statements constituted political speech.

45.     Plaintiffs Crowe and Peterson, and Plaintiff ORCLA's members, had no opportunity in advance to prevent their mandatory member dues from being used to publish the April 2018 *Bar Bulletin* statements.

46.     Plaintiffs Crowe and Peterson learned of OSB's publication of these statements when they received the *Bar Bulletin* by mail in April 2018.

47.     Plaintiffs Crowe and Peterson disagree with the statements' allegations against, and explicit and implicit criticism of, President Trump.

48.     If given a choice, Plaintiffs Crowe and Peterson would not have voluntarily paid for publication of the statements.

49.     On April 25, 2018, Plaintiff Peterson contacted Defendant Hierschbiel to inform OSB of his objections to the use of bar fees to publish the statements, and he requested a refund of his annual membership fees.

50.     On April 26, 2018 Plaintiff Crowe contacted Defendant Hierschbiel to inform OSB of his objections to the use of bar dues to publish the statements, and he requested a refund of his annual membership fees.

51.     In response to their objections, Plaintiffs Crowe and Peterson each received a partial dues refund from OSB in the amount of $1.15 ($1.12 plus statutory interest from the date bar fees were due).

52.     Other OSB members also objected to the statements in the April 2018 *Bar Bulletin* and then received partial dues refunds.

53.     OSB has not informed Plaintiffs of how it calculated the amounts of these partial dues refunds.

**Plaintiffs' Injuries**

54.     Plaintiffs Crowe and Peterson, and Plaintiff ORCLA's members, do not wish to have their OSB membership dues used to fund OSB's legislative and policy advocacy and, if given a choice, would not fund that activity.

55.     Plaintiffs Crowe and Peterson, and Plaintiff ORCLA's members, did not wish to have their OSB membership dues used to publish the two statements in the April 2018 *Bar Bulletin* and, if given a choice, would not have funded the statements' publication.

56.     Plaintiffs Crowe and Peterson, and Plaintiff ORCLA's members, do not wish to have their OSB membership dues used for any other political speech or activity and, if given a choice, would not fund any political speech or activity by OSB.

57.    Plaintiffs Crowe and Peterson, and Plaintiff ORCLA's members, object to being required to be members of OSB to be allowed to practice law in Oregon.

58.    Plaintiffs Crowe and Peterson, and Plaintiff ORCLA's members, object to being required to pay dues or fees to OSB to be allowed to practice law in Oregon.

59.    Plaintiffs Crowe and Peterson, and Plaintiff ORCLA's members, have suffered irreparable harm from being required to join and pay dues to OSB as a condition of practicing law in Oregon.

60.    Plaintiffs Crowe and Peterson, and Plaintiff ORCLA's members will suffer irreparable harm if the State of Oregon continues to require them to be members of, and pay dues to, OSB as a condition of practicing law in Oregon.

## FIRST CLAIM FOR RELIEF
### (Compelled Speech and Association)
### (First and Fourteenth Amendments)

61.    The allegations contained in the preceding paragraphs are incorporated by reference as if fully set forth here.

62.    Mandatory bar fees inherently impinge on the First Amendment rights of freedom of association and freedom of speech.

63.    To limit mandatory fees' impingement on First Amendment rights, the Supreme Court has required bar associations such as OSB to use mandatory fees only for activities germane to improving the quality of legal services. *See Keller*, 496 U.S. at 14.

64.    To protect the rights of OSB members and ensure mandatory member fees are utilized only for chargeable expenditures, *Keller* requires the OSB to institute safeguards that provide, at a minimum: (a) notice to members, including an adequate explanation of the basis for the dues and calculations of all non-chargeable activities, verified by an independent auditor; (b)

a reasonably prompt decision by an impartial decision maker if a member objects to the way his

or her mandatory dues are being spent; and (c) an escrow for the amounts reasonably in dispute

while such objections are pending. *Keller*, 496 U.S. at 14.

65.     Refunding mandatory fees after a member's objection is resolved is insufficient to

protect members' First Amendment rights. A remedy that merely offers dissenters the possibility

of a refund does not avoid the risk that dissenters' funds may be used temporarily for an

improper purpose.

66.     OSB does not provide Plaintiffs Crowe and Peterson, and Plaintiff ORCLA's

members, an adequate explanation for the basis of their mandatory dues.

67.     OSB does not afford Plaintiffs Crowe and Peterson, and Plaintiff ORCLA's

members, any constitutionally adequate procedure to dispute the way their dues are spent.

68.     OSB has taken the position that it may use member dues for non-chargeable

activities as long as it refunds a portion of dues back to members who object to the non-

chargeable activity.

69.     As a result of its insufficient safeguards and procedures, OSB has used mandatory

member dues for non-chargeable activities, including political speech, without receiving

members' affirmative consent, both through its publication of the April 2018 *Bar Bulletin* and

through its legislative and policy advocacy generally.

70.     By failing to provide the minimum safeguards required by the First and

Fourteenth Amendments before collecting and expending mandatory member dues, Defendants

maintain and enforce a set of laws, practices, procedures and policies that deprive Plaintiffs of

their First and Fourteenth Amendment rights.

71.     This deprivation of constitutional rights is causing Plaintiffs to suffer irreparable injury for which there is no adequate remedy at law. Unless enjoined by this Court, Plaintiffs will continue to suffer irreparable harm.

72.     Plaintiffs are entitled to declaratory and injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional laws, practices, procedures and policies, and are entitled to an award of attorney fees. *See* 28 U.S.C. §§ 2201, 2202; 42 U.S.C. §§ 1983, 1988.

**SECOND CLAIM FOR RELIEF**
**(Right to Affirmatively Consent)**
**(First and Fourteenth Amendments)**

73.     The allegations contained in the preceding paragraphs are incorporated by reference as if fully set forth here.

74.     Under the First and Fourteenth Amendments, a manatory bar association may not use a member's mandatory dues or fees to engage in political activities or other activities not germane to the bar association's purpose of improving the quality of legal services through the regulation of attorneys unless the member affirmatively consents to having his or her dues or fees used for that purpose.

75.     To protect members' First Amendment rights, a mandatory bar association such as OSB must create an "opt-in" system for members to pay for the bar association's non-germane speech and activities; it cannot require members to opt out to avoid paying for non-germane activities. *See Janus*, 138 S. Ct. at 2486.

76.     The OSB has used mandatory member fees for non-chargeable activities, including political speech, without receiving members' affirmative consent, both through its

publication of the April 2018 Bar Bulletin and through its legislative and policy advocacy generally.

77.    OSB maintains and enforces a set of laws, practices, procedures, and policies that are not adequate to ensure that mandatory member fees will not be used for non-chargeable activities, including political speech, without members' affirmative consent.

78.    Accordingly, Defendants are maintaining and actively enforcing a set of laws, practices, procedures and policies that deprive Plaintiffs of their rights of free speech and free association, in violation of the First and Fourteenth Amendments.

79.    Plaintiffs are entitled to declaratory and injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional laws, practices, procedures and policies, and are entitled to an award of attorney fees. See 28 U.S.C. §§ 2201, 2202; 42 U.S.C. §§ 1983, 1988.

**THIRD CLAIM FOR RELIEF**
**(Compelled Membership)**
**(First and Fourteenth Amendments)**

80.    The allegations contained in the preceding paragraphs are incorporated by reference as if fully set forth here.

81.    The First and Fourteenth Amendments protect not only the freedom to associate, but also the freedom not to associate.

82.    The First and Fourteenth Amendments protect the freedom to avoid subsidizing group speech with which an individual disagrees.

83.    By its very nature, the OSB, as a mandatory bar association, violates these rights.

84.     Mandatory associations are permissible only when they serve a compelling state interest that cannot be achieved through means significantly less restrictive of associational freedoms.

85.     The only state interest possibly served by a mandatory bar association is improvement of the quality of legal services through the regulation of attorneys.

86.     The state can readily use means that are significantly less restrictive of associational freedoms to improve the quality of legal services through the regulation of attorneys.

87.     This is evidenced by the 18 states that regulate the legal profession without requiring attorneys to join and pay a bar association.

88.     By failing to utilize means significantly less restrictive of associational freedoms than a mandatory association, Defendants maintain and actively enforce a set of laws, practices, procedures and policies that deprive Plaintiffs of their rights of free speech and free association, in violation of the First and Fourteenth Amendments.

89.     Plaintiffs are entitled to declaratory and injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional laws, practices, procedures and policies, and are entitled to an award of attorney fees. See 28 U.S.C. §§ 2201, 2202; 42 U.S.C. §§ 1983, 1988.

## REQUEST FOR RELIEF

Wherefore, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs' favor and:

A. Declare that Plaintiffs' rights to freedom of speech and association under the First and Fourteenth Amendments are violated by Defendants' failure to implement the minimum safeguards required by *Keller v. State Bar of California;*

B. Declare that Defendants may not use the mandatory fees of OSB members, including Plaintiffs, for non-chargeable activities unless the members have affirmatively consented to having their dues used for those purposes, as required by *Janus v. AFSCME*;

C. In the alternative, declare that Defendants violate Plaintiffs' rights to freedom of speech and association under the First and Fourteenth Amendments by enforcing Oregon statutes that make membership in OSB a prerequisite to practicing law in Oregon and by imposing mandatory dues as a condition of membership;

D. Preliminarily and permanently enjoin Defendants and all persons in active concert or participation with them from enforcing ORS 9.160, which mandates membership in the Oregon State Bar, and ORS 9.191, which requires payment of membership fees to the Oregon State Bar.

E. Award Plaintiffs Crowe and Peterson damages in the amount of all dues they have paid to the Oregon State Bar within the applicable limitations period, plus interest;

F. Award Plaintiffs their costs, attorneys' fees, and other expenses in accordance with law, including 42 U.S.C. § 1988; and

G. Order such additional relief as may be just and proper.

Dated this 13th day of December, 2018.

> **DANIEL Z. CROWE, LAWRENCE K. PETERSON, and OREGON CIVIL LIBERTIES ATTORNEYS**
>
> By: /s/ Luke D. Miller
> Luke D. Miller, OSB No. 175051
> Military Disability Lawyer, LLC.
> 1567 Edgewater St. NW
> PMB 43
> Salem, OR 97304
> Telephone: (800) 392-5682
> Fax: (503) 779-1091
> luke@militarydisabilitylawyer.com

Jacob Huebert (*pro hac vice* motion pending)
Aditya Dynar (*pro hac vice* motion pending)
Goldwater Institute
Scharf-Norton Center for Constitutional Litigation
500 E. Coronado Rd.
Phoenix, AZ 85004
Telephone: (602) 462-5000
Fax: (602) 256-7045
litigation@goldwaterinstitute.org

*Attorneys for Plaintiffs*