Luke D. Miller, OSB No. 175051
Military Disability Lawyer, LLC
1567 Edgewater St. NW
PMB 43
Salem, OR 97304
Telephone: (800) 392-5682
Fax: (503) 779-1091
luke@militarydisabilitylawyer.com

Jacob Huebert (*pro hac vice*)
Aditya Dynar (*pro hac vice*)
Goldwater Institute
Scharf-Norton Center for Constitutional Litigation
500 E. Coronado Rd.
Phoenix, AZ 85004
Telephone: (602) 462-5000
Fax: (602) 256-7045
litigation@goldwaterinstitute.org

      Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DANIEL Z. CROWE, et al., | Case No. 3:18-cv-02139-JR |
| Plaintiffs, | PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS |
| v. | **ORAL ARGUMENT REQUESTED** |
| OREGON STATE BAR, et al., | |
| Defendants. | |

Plaintiffs' Response to
Defendant's Motion to Dismiss

# TABLE OF CONTENTS

Table of Contents ................................................................................................. i

Table of Authorities .......................................................................................... iii

I.  INTRODUCTION ........................................................................................1

II.  FACTS ..........................................................................................................2

    A.  Oregon's mandatory bar membership and fees ........................................2

    B.  OSB's use of mandatory fees for political and ideological speech .................................2

    C.  Plaintiffs' injuries.....................................................................................4

    D.  Plaintiffs' claims .....................................................................................5

III.  LEGAL STANDARDS .................................................................................6

    A.  Rule 12(b)(1) standard .............................................................................6

    B.  Rule 12(b)(6) standard .............................................................................6

IV.  ARGUMENT ................................................................................................7

    A.  Plaintiffs have stated claims for violations of their First and Fourteenth Amendment rights. ..........................................................................................7

        1.  Plaintiffs have stated a First and Fourteenth Amendment claim against mandatory OSB membership. .........................................................................7

            a.  *Keller*, *Lathrop*, and *Harris* do not control. .....................................7

            b.  Dismissal is improper because Defendants have not shown that mandatory bar membership satisfies exacting First Amendment scrutiny. .............................10

        2.  Plaintiffs have stated a First and Fourteenth Amendment claim challenging OSB's use of mandatory fees for non-chargeable activities without members' affirmative consent. ........................................................................................12

            a.  OSB cannot use an attorney's funds for political or ideological activities without obtaining the attorney's affirmative consent. .....................................13

            b.  OSB uses attorneys' mandatory dues for political and ideological speech without their affirmative consent. .................................................................13

       c.   Dismissal is improper because Defendants have not shown that mandatory bar dues satisfy exacting First Amendment scrutiny. ...............................16

    3.   Plaintiffs have stated a First and Fourteenth Amendment claim challenging OSB's lack of safeguards to ensure member fees are not used for non-germane activities. 18

B.   The Oregon State Bar is not entitled to Eleventh Amendment immunity ....................21

    1.   A money judgment against the OSB would not be satisfied out of state funds. ....22

    2.   The OSB does not perform central governmental functions. ................................23

    3.   The OSB may sue and be sued. ..........................................................................26

    4.   The OSB may take property in its own name, not the name of the state. .............26

    5.   The OSB's corporate status weighs against immunity. ..........................................27

C.   Defendants' qualified immunity argument is moot because Plaintiffs do not seek damages against the individual Defendants. ..................................................29

D.   Plaintiffs do not oppose dismissal of the Oregon State Bar Board of Governors. ...........................................................................................................30

V.  CONCLUSION .........................................................................................................30

CERTIFICATE OF SERVICE ................................................................................31

# TABLE OF AUTHORITIES

**Cases**

*Abood v. Detroit Board of Education*, 431 U.S. 209 (1977) .................................................... 9, 17

*Beentjes v. Placer Cnty. Air Pollution Control Dist.*, 397 F.3d 775 (9th Cir. 2005)............. passim

*Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248 (9th Cir 1992)......................................... 26

*Broam v. Bogan*, 320 F.3d 1023 (9th Cir. 2003) .......................................................................... 6

*Chicago Teachers Union v. Hudson*, 475 U.S. 292 (1986) ......................................... 9, 15, 19, 20

*Coultas v. Payne*, No. 3:12-cv-1132-AC, 2012 WL 6725845 (D. Or. Nov. 27, 2012), *report and recommendation adopted* 2012 WL 6726247 (D. Or. Dec. 27, 2012)...................................... 21

*Durning v. Citibank, N.A.*, 950 F.2d 1419 (9th Cir. 1991) ........................................ 21, 22, 23, 28

*Eason v. Clark Cnty. Sch. Dist.*, 303 F.3d 1137 (9th Cir. 2002)............................................ 26, 28

*Erwin v. Or. ex rel. Kitzhaber*, 231 F. Supp. 2d 1003 (D. Or. 2001), *aff'd on other grounds* 43 Fed. App'x 122 (9th Cir. 2002)................................................................................................ 22

*Estate of Pond v. Oregon*, 322 F. Supp. 2d 1161 (D. Or. 2004).................................................. 26

*Eugster v. Wash. State Bar Ass'n*, No. C15-0375JLR, 2015 WL 5175722 (W.D. Wash. Sept. 3, 2015), *aff'd on other grounds* 684 Fed. App'x 618 (9th Cir 2017) .......................................... 21

*Ginter v. State Bar of Nev.*, 625 F2d 829 (9th Cir 1980).............................................................. 21

*Gressett v. Cent. Ariz. Water Conservation Dist.*, No. CV 12-00185-PHX-JAT, 2012 WL 3028347 (D. Ariz. July 24, 2012)................................................................................................ 24

*Harris v. Quinn*, 134 S. Ct. 2618 (2014) .......................................................................... 7, 9, 10

*Hartfield v. Or. State Bar*, No. 3:16-cv-00068-ST, 2016 WL 9225978 (D. Or. Jan. 15, 2016), *report and recommendation adopted* 2016 WL 9226386 (D. Or. Feb. 16, 2016), *aff'd on other grounds* 671 F App'x 456 (9th Cir 2016) ................................................................................ 21

*Hess v. Port Auth. Trans–Hudson Corp.,* 513 U.S. 30 (1994) ............................................... 22, 23

*Hirsh v. Justices of Sup. Ct. of Cal.*, 67 F.3d 708 (9th Cir 1995) ................................................ 21

*Holz v. Nenana City Pub. Sch. Dist.*, 347 F.3d 1176 (9th Cir. 2003) ......................................... 22

*Hudson v. Chi. Teachers Union*, 743 F.2d 1187 (7th Cir. 1984), *aff'd* 475 U.S. 292 (1986) ........ 9

*Hyland v. Wonder,* 117 F.3d 405 (9th Cir. 1997) ........................................................ 22

*In re Pet. for a Rule Change to Create a Voluntary State Bar of Neb.*, 841 N.W.2d 167 (Neb. 2013) ........................................................................................................................ 12

*ITSI T.V. Prods., Inc. v. Agric. Ass'ns*, 3 F.3d 1289 (9th Cir. 1993) ............................. 6

*Janus v. AFSCME*, 138 S. Ct. 2448 (2018) ....................................................... passim

*Keller v. State Bar of Calif.*, 496 U.S. 1 (1990) ................................................. passim

*Kingstad v. State Bar of Wis.*, 622 F.3d 708 (7th Cir. 2010) ....................................... 12

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) ................................ 6

*Lathrop v. Donohue*, 367 U.S. 820 (1961) ............................................................ 7, 8, 9

*Mitchell v. L.A. Cmty. Coll. Dist.*, 861 F.2d 198 (9th Cir. 1988) .......................... passim

*Morrow v. State Bar of Cal.*, 188 F.3d 1174 (9th Cir. 1999) ................................. 16, 20

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977) ..................... 28

*Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518 (9th Cir.1989) .............. 29

*Ry. Employees' Dept. v. Hanson*, 351 U.S. 225 (1956) ............................................. 8, 9

*Savage v. Glendale Union High Sch., Dist. No. 205*, 343 F.3d 1036 (9th Cir. 2003) ........... 23, 28

*Stewart v. Baldwin Cnty. Bd. of Educ.*, 908 F.2d 1499 (11th Cir. 1990) ..................... 28

*United States v. United Foods, Inc.*, 533 U.S. 405 (2001) .......................................... 10

*Weidner v. Albertazzi*, No. 06-930-HO, 2006 WL 2987704 (D. Or. Oct. 13, 2006) .................... 21

*Wojcik v. Mass. State Lottery Comm'n,* 300 F.3d 92 (1st Cir. 2002) .......................... 25

*Wolfe v. Strankman*, 392 F.3d 358 (9th Cir. 2004) ...................................................... 6

**Statutes**

42 U.S.C. § 1983 ......................................................................................................... 5

ORS 9.010(2) ............................................................................................................ 28

ORS 9.010(3) ............................................................................................................ 27

Plaintiffs' Response to
Defendants' Motion to Dismiss - iv

ORS 9.010(4) ................................................................................................................. 27

ORS 9.010(5) ........................................................................................................... 26, 27

ORS 9.010(6) ................................................................................................................. 23

ORS 9.025 ...................................................................................................................... 25

ORS 9.040 ...................................................................................................................... 25

ORS 9.055 ...................................................................................................................... 25

ORS 9.070 ...................................................................................................................... 23

ORS 9.070(2) ................................................................................................................. 27

ORS 9.080 ...................................................................................................................... 25

ORS 9.080(4) ................................................................................................................. 29

ORS 9.090 ................................................................................................................ 23, 27

ORS 9.160 ........................................................................................................................ 2

ORS 9.191 ........................................................................................................................ 2

ORS 9.210(1) ................................................................................................................. 25

ORS 9.210(2) ................................................................................................................. 24

ORS 9.210(3) ................................................................................................................. 24

ORS 9.220 ...................................................................................................................... 24

ORS 9.250 ...................................................................................................................... 24

ORS 9.261 ...................................................................................................................... 24

ORS 9.490 ...................................................................................................................... 24

ORS 9.527 ...................................................................................................................... 24

ORS 9.532 ...................................................................................................................... 25

ORS 9.534 ...................................................................................................................... 25

ORS 9.536 ................................................................................................................... 24

ORS 9.542 ................................................................................................................... 24

ORS 174.109 ............................................................................................................... 28

ORS 174.111 ............................................................................................................... 28

ORS 174.113 ............................................................................................................... 28

ORS 174.117(1) ........................................................................................................... 28

ORS 293.265 ............................................................................................................... 27

**Other Authorities**

44 Or. Op. Att'y Gen. 336 (1985) ......................................................................... 23, 27

Alex Blasdel, *How the Resurgence of White Supremacy in the US Sparked a War Over Free Speech*, Guardian (May 31, 2018) ..................................................................... 14

American Bar Association, *National Lawyer Population Survey 2018* ......................... 12

Katherine Mangu-Ward, *'No Free Speech for Fascists' Is a Truly Terrible Idea*, Reason (Aug. 14, 2017) ............................................................................................................. 14

OSB Bylaws § 2.1(a) .................................................................................................... 25

OSB Bylaws § 2.1(b) .................................................................................................... 25

OSB Bylaws § 29 ......................................................................................................... 25

Ralph H. Brock, *"An Aliquot Portion of Their Dues:" A Survey of Unified Bar Compliance with Hudson and Keller*, 1 Tex. Tech J. Tex. Admin. L. 23 (2000) ................................ 12

*State Employee List (Alphabetical)* ............................................................................ 29

Timothy E.D. Horley, *Rethinking the Heckler's Veto After Charlottesville*, 104 Va. L. Rev. Online 8 (2018) ....................................................................................................... 14

**Rules**

Fed. R. Civ. P. 12(b)(1) ........................................................................................... 6, 21

Fed. R. Civ. P. 12(b)(6) ....................................................................................... 6, 7, 20

**Constitutional Provisions**

U.S. Const., amend. I ................................................................................ passim

U.S. Const., amend. XI ............................................................................... passim

U.S. Const., amend. XIV ............................................................................. passim

## I.    INTRODUCTION

Oregon requires attorneys to join and pay dues to the Oregon State Bar ("OSB") as a condition of practicing law in the state. The OSB uses some of the mandatory dues money it collects for political and ideological speech. The Plaintiffs—two Oregon attorneys and a nonprofit organization whose members are Oregon attorneys—object to mandatory bar membership and dues, and to the use of mandatory dues for political and ideological speech.

In their Complaint, Plaintiffs state three causes of action under the First and Fourteenth Amendment, which respectively allege that: (1) mandatory OSB membership violates attorneys' right to freedom of association; (2) OSB has violated their right to free speech by using dues money for political and ideological speech without their affirmative consent; and (3) regardless of whether mandatory dues and fees are inherently unconstitutional, the OSB has insufficient safeguards to ensure that dues are not used for political and ideological activity that is not germane to the OSB's purpose of regulating lawyers and improving the quality of legal services.

Plaintiffs' claims are well-founded. The Supreme Court has recently made clearer than ever that mandatory associations infringe on First Amendment rights and that a mandatory association such as the OSB must obtain individuals' affirmative consent before using their money for political speech. *See Janus v. AFSCME*, 138 S. Ct. 2448, 2463, 2486 (2018). Moreover, the OSB has failed to provide procedural safeguards to protect First Amendment rights that Supreme Court precedent has required for decades.

Further, the OSB has not established that it is entitled to Eleventh Amendment immunity, and it is undisputed that Plaintiffs may pursue declaratory and injunctive relief against the individual Defendants, who are OSB officials sued in their official capacity.

The Court therefore should deny Defendants' motion to dismiss.

Plaintiffs' Response to
Defendants' Motion to Dismiss - 1

## II.    FACTS

This lawsuit challenges the State of Oregon's requirement that attorneys join and pay fees to Defendant OSB, the OSB's use of attorneys' mandatory fees for political and ideological activity without members' affirmative consent, and OSB's lack of procedures to protect members' First Amendment rights.

### A.    Oregon's mandatory bar membership and fees

Oregon law compels every attorney licensed in Oregon to join its integrated bar association, the OSB, in order to earn a living practicing law in the state. ORS 9.160; Compl. ¶ 26. State law also authorizes OSB to charge annual membership fees to its mandatory members. ORS 9.191; Compl. ¶ 27. The OSB publishes general information about its allocation of membership fees—identifying general categories of expenditures—but it does not publish information about whether or how it determines whether a given allocation of funds was for purposes germane to improving the quality of legal services and regulating attorneys. Compl. ¶ 34.

### B.    OSB's use of mandatory fees for political and ideological speech

In fact, OSB uses mandatory member fees for legislative and policy advocacy in accordance with "Legislative Policy Guidelines" approved by its Board of Governors. *Id.* ¶¶ 35, 37. Those Guidelines state:

> OSB's legislative or policy activities shall be limited to those reasonably related to any of the following subjects: regulating and disciplining lawyers; improving the function of the courts, including issues of judicial independence, fairness, efficacy and efficiency; making legal services available to society; regulating lawyer trust accounts; the education, ethics, competence, integrity and regulation of the legal profession; providing law improvement assistance to elected and appointed government officials; issues involving the structure and organization of federal, state and local courts in or affecting Oregon, issues involving rules of practice,

> procedure and evidence in federal, state or local court in or
> affecting Oregon; or issues involving the duties and functions of
> judges and lawyers in federal, state and local courts in or affecting
> Oregon.

*Id.* ¶ 36.

OSB's Legislative Policy Guidelines do not distinguish between germane and non-germane activities. *Id.* ¶ 37. Nor do they articulate what tests or procedures, if any, are in place to ensure that OSB's classification of expenditures as germane is proper. *Id.* ¶ 38.

Further, OSB lacks safeguards and procedures to ensure that members' fees are not used for non-chargeable activities such as political speech. *Id.* ¶ 67. Indeed, OSB has taken the position that it may use member dues for non-chargeable activities as long as it refunds a portion of dues back to members who object to a given non-chargeable activity. *Id.* ¶ 68. As a result of its insufficient safeguards and procedures, OSB has used mandatory member dues for non-chargeable activities, including political speech, without receiving members' affirmative consent. *Id.* ¶ 69. And through its legislative and policy activities, OSB expends members' dues for political and ideological activities that are not germane to OSB's purpose. *Id.* ¶ 40.

Further, the OSB has used mandatory member fees to publish political speech in its *Bar Bulletin* periodical. *Id.* ¶¶ 41-44. In the April 2018 *Bar Bulletin*, the OSB published, on opposing pages, two statements on alleged "white nationalism," one of which criticized President Donald Trump for, among other things, allegedly "allowing [the white nationalist movement] to make up the base of his support" and signing an executive order restricting immigration and refugee admissions. *Id.* ¶¶ 42-43 & Compl. Exh. A.

Plaintiffs Daniel Crowe and Lawrence Peterson—Oregon attorneys who have been compelled to join and pay dues to OSB—learned of OSB's publication of these statements when they received the *Bar Bulletin* in the mail in April 2018. Compl. ¶¶ 14, 17, 28, 46. Crowe and

Peterson disagree with the statements' allegations against, and explicit and implicit criticism of, President Trump.[1] *Id.* ¶ 47. If given a choice, they would not have voluntarily paid for the statements' publication. *Id.* ¶ 48. On April 25, 2018, Peterson contacted Defendant Helen Hierschbiel, OSB's Chief Executive Officer and Chief Executive Director, to inform OSB of his objections to the use of bar fees to publish the statements, and requested a refund of his annual membership fees. *Id.* ¶¶ 23, 49. The following day, Mr. Crowe did the same. *Id.* ¶ 50.

In response to their objections, Crowe and Peterson each received a partial dues refund from OSB in the amount of $1.15—calculated as $1.12, plus $0.03 of statutory interest. *Id.* ¶ 51. Other OSB members also objected to the statements and then likewise received partial dues refunds. *Id.* ¶ 52. OSB has not informed Crowe and Peterson how it calculated the amounts of these partial dues refunds.[2] *Id.* ¶ 53.

### C.    Plaintiffs' injuries

Plaintiffs Crowe and Peterson have suffered irreparable harm from being required to join and pay dues to OSB as a condition of practicing law in Oregon. *Id.* ¶ 59. They object to being required to join and pay dues to OSB as a condition of practicing law in the state. *Id.* ¶¶ 57-58.

---

[1] Defendants' motion to dismiss selectively quotes the *Bar Bulletin* statements' general condemnations of white nationalism and violence and then asserts that Crowe and Peterson "disagreed with these statements"—potentially creating the false and offensive impression that the Plaintiffs are not opposed to white nationalism and violence. (Mot. to Dismiss ("MTD") 11-12.) The Complaint makes Crowe and Peterson's primary disagreement clear: they "disagree with the statements' allegations against, and explicit and implicit criticism of, President Trump." Compl. ¶ 47. Further, Plaintiffs object to OSB using mandatory fees for *any* political speech, regardless of content. *Id.* ¶ 56.

[2] Defendants' motion to dismiss asserts that Crowe and Peterson "received a refund for the full amount of their membership fees used to publish the April 2018 *Bulletin*, plus statutory interest," citing paragraph 51 of the Complaint. MTD at 5. But the Complaint does *not* state that the refunds Plaintiffs received were the "full amount" of fees used to publish the statements they objected to. Rather, it states that OSB has provided no explanation of how it determined the refund amount. Compl. ¶ 53.

As long as they are forced to pay dues to OSB, they do not wish to have those dues used to fund OSB's legislative and policy advocacy. *Id.* ¶ 54. If given a choice, they would not fund that activity. *Id*. They did not wish to have their mandatory dues used to publish the two statements in the April 2018 *Bar Bulletin* in particular and, if given a choice, would not have funded the statements' publication. *Id.* ¶ 55. Further, Crowe and Peterson do not wish to have their mandatory dues used for *any* political speech or activity and, if given a choice, would not fund any of OSB's political speech or activity. *Id.* ¶ 56.

Plaintiff Oregon Civil Liberties Attorneys ("ORCLA") is a nonprofit organization whose members are all attorneys licensed to practice law in Oregon and are therefore mandatory members of OSB. *Id.* ¶ 18. ORCLA is a plaintiff on behalf of its members, who are being injured in the same way that Crowe and Peterson are being injured: they do not wish to be required to join or pay OSB, and they do not wish to have their mandatory OSB dues used to fund OSB's political speech or activity. *Id.* ¶¶ 54-60.

### D.    Plaintiffs' claims

Plaintiffs filed this lawsuit under 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution to challenge OSB's mandatory membership and fees and its use of mandatory fees for political and ideological activities.

In their first claim, Plaintiffs allege that OSB has violated their First and Fourteenth Amendment rights by failing to provide minimum safeguards to ensure that member dues are not used for non-chargeable activity. Compl. ¶¶ 61-72.

In their second claim, Plaintiffs allege that OSB has violated their First and Fourteenth Amendment rights by using mandatory dues for non-chargeable activities—including publication

of the April 2018 *Bar Bulletin* and OSB's legislative and policy advocacy generally—without

obtaining members' prior, clear, and affirmative consent. *Id.* ¶¶ 73-79.

In their third claim, Plaintiffs allege that compulsory OSB membership and dues

inherently violate attorneys' right to choose which groups they will and will not associate with

and their right to avoid subsidizing group speech with which they disagree, both of which are

protected by the First and Fourteenth Amendments. *Id.* ¶¶ 80-89.

## III.    LEGAL STANDARDS

### A.    Rule 12(b)(1) standard

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the

Court must accept all of the complaint's factual allegations as true. *Wolfe v. Strankman*, 392 F.3d

358, 362 (9th Cir. 2004). Ordinarily, a jurisdictional attack under Rule 12(b)(1) would require

plaintiff to bear the burden of establishing the court's jurisdiction. *See Kokkonen v. Guardian*

*Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). But where, as here, an entity asserts Eleventh

Amendment immunity—which "does not implicate a federal court's subject matter jurisdiction

in any ordinary sense"—the entity asserting immunity bears the burden to prove that it applies.

*ITSI T.V. Prods., Inc. v. Agric. Ass'ns*, 3 F.3d 1289, 1291 (9th Cir. 1993).

### B.    Rule 12(b)(6) standard

"Rule 12(b)(6) motions are viewed with disfavor." *Broam v. Bogan*, 320 F.3d 1023, 1028

(9th Cir. 2003). "When ruling on a 12(b)(6) motion, the complaint must be construed in the light

most favorable to the plaintiff. The court must accept as true all material allegations in the

complaint, as well as any reasonable inferences to be drawn from them." *Id.* (internal citations

omitted).

## IV.    ARGUMENT

### A.    Plaintiffs have stated claims for violations of their First and Fourteenth Amendment rights.

The Court should deny Defendants' motion to dismiss under Rule 12(b)(6) because Plaintiffs have stated valid First and Fourteenth Amendment claims challenging Oregon's mandatory bar membership, the OSB's use of fees for political and ideological speech without members' affirmative consent, and the OSB's lack of procedures to ensure that members' First Amendment rights are respected.

### 1.    Plaintiffs have stated a First and Fourteenth Amendment claim against mandatory OSB membership.

Defendants' motion to dismiss should be denied with respect to Plaintiffs' Third Claim for Relief because it states a valid First and Fourteenth Amendment claim challenging Oregon's mandatory bar membership. Compl. ¶¶ 80-89. The Supreme Court has made clear that "[t]he right to eschew association for expressive purposes" is "protected" by the First Amendment. *Janus*, 138 S. Ct. at 2463. Therefore, forcing Plaintiffs to join OSB as a condition of practicing law infringes on their First Amendment right to freedom of association. And Defendants have not justified that infringement by showing, as they must, that it "serve[s] a compelling state interest that cannot be achieved through means significantly less restrictive of associational freedoms." *Id*. at 2465 (citation omitted).

#### a.    *Keller*, *Lathrop*, and *Harris* do not control.

Contrary to Defendants' argument, Supreme Court precedent does not foreclose Plaintiffs' claim. *See* MTD 13-14.

*Keller v. State Bar of California*, 496 U.S. 1 (1990), does not control this claim because that case did not actually decide the constitutionality of mandatory bar membership. Rather,

Plaintiffs' Response to
Defendants' Motion to Dismiss - 7

*Keller* assumed, without deciding, that compulsory membership requirements are valid, citing *Lathrop v. Donohue*, 367 U.S. 820 (1961). *Keller*, 496 U.S. at 7-9. *Keller* then went on to decide a narrower question: whether an attorney's "free speech rights were violated by the [state] Bar's use of his mandatory dues to support objectionable political activities"—a question it answered in the affirmative. *Id.* at 9.

Lathrop did not actually resolve the mandatory-membership question, either. It was a plurality decision so confusing in its wording that Justice Black remarked, "I do not believe that either the bench, the bar or the litigants will know what has been decided in this case—certainly I do not." *Lathrop,* 367 U.S. at 865 (Black, J., dissenting); *see also id.* at 848 (Harlan & Frankfurter, JJ., concurring) (complaining of the decision's "disquieting Constitutional uncertainty"). And the plurality said that it was addressing "only … a question of compelled financial support of group activities, not … involuntary membership in any other respect," *id.* at 828—meaning, in short, that *Lathrop* failed to resolve the question at issue here. Instead, the *Lathrop* plurality simply assumed it was constitutional to force lawyers to join a bar association, *see id.* at 843, just as the *Keller* Court did three decades later.

In assuming that mandatory membership was constitutional, *Lathrop* cited another case that likewise did not actually establish the constitutionality of mandatory bar association membership, *Railway Employes' Department v. Hanson*, 351 U.S. 225 (1956). *See Lathrop*, 367 U.S. at 842-43. *Hanson* involved, not mandatory bar association membership, but mandatory union membership. *Hanson*, 351 U.S. at 227. *Hanson*'s only reference to bar association membership was dicta, stating that mandatory union membership for railway work was "no more an infringement or impairment of First Amendment rights than there would be in the case of a lawyer who by state law is required to be a member of an integrated bar." *Id.* at 238.

Plaintiffs' Response to
Defendants' Motion to Dismiss - 8

What's more, *Hanson* has been abrogated. *See Hudson v. Chi. Teachers Union*, 743 F.2d 1187, 1194 (7th Cir. 1984) (describing *Hanson* as "no longer authoritative"), *aff'd* 475 U.S. 292 (1986). In *Harris v. Quinn*, 134 S. Ct. 2618 (2014), the Court explained why *Hanson* had been superseded: because it had "disposed of the critical question in a single, unsupported sentence that its author essentially abandoned a few years later." *Id.* at 2632. There, the Court was referring to the fact that "in his *Lathrop* dissent, Justice Douglas, the author of *Hanson*, came to the conclusion that the First Amendment *did not permit* compulsory membership in an integrated bar." *Id.* at 2629. *Harris* also criticized *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977)—the case *Janus* finally overruled—for "treating *Hanson* … as having all but decided the constitutionality of compulsory payments to a public-sector union." *Harris*, 134 S. Ct. at 2632; *see also Janus*, 138 S. Ct. at 2479-80 (describing *Abood*'s reliance on *Hanson* as "unwarranted"). Of course, *Lathrop* treated *Hanson* the same way—and so, in turn, did *Keller*.

In addition to its reliance on *Hanson*'s dicta, *Lathrop* has another problem: it failed to apply the scrutiny that modern First Amendment jurisprudence requires. The *Lathrop* plurality said that, because legislators "might reasonably believe" that "the bulk of State Bar activities serve the function … of elevating the educational and ethical standards of the Bar," the state could "require that the costs of improving the profession in this fashion" be imposed on lawyers in the form of mandatory bar fees. 367 U.S. at 843. That conclusion has been abrogated, however, because *Janus* makes clear that it is *not* enough that legislators might "reasonably believe" that compelling association and speech might serve some legitimate purpose. 138 S. Ct. at 2465. Indeed, *Janus* characterized the "reasonableness" standard that the *Lathrop* plurality applied as "foreign to our free-speech jurisprudence." *Id.*; *see also id.* at 2479-80 (noting that *Hanson*'s "deference to legislative judgments" is "inappropriate in deciding free speech issues").

Plaintiffs' Response to
Defendants' Motion to Dismiss - 9

*Janus* made clear that courts must apply "exacting scrutiny"—or possibly even strict scrutiny—to the question whether the state's decision to force an attorney to join the state bar association violates the First Amendment freedom of association. *Id.* at 2465. Under exacting scrutiny, compelled association "must 'serve a compelling state interest that cannot be achieved through means significantly less restrictive of associational freedoms.'" *Id.* (citation omitted).

Defendants' suggestion that *Harris* approved of mandatory bar membership by "affirm[ing]" *Keller* is incorrect. (MTD 13-14.) When *Harris* referred to *Keller* "fit[ting] comfortably within the framework" of current First Amendment law, 134 S. Ct. at 2643, it was referring to the question of "allocating to the members of the bar, rather than the general public, the expense of ensuring that attorneys adhere to ethical practices"; it was *not* referring to the question of compulsory association that *Keller* failed to resolve. Indeed, every time the Supreme Court has fit *Keller* into its compelled speech and association case law, it has emphasized that regulatory core—*not* the compulsory association question. *See, e.g., United States v. United Foods, Inc.*, 533 U.S. 405, 414 (2001) ("The central holding in *Keller*, moreover, was that the objecting members were not required to give speech subsidies for matters not germane to the larger regulatory purpose which justified the required association.").

> **b.     Dismissal is improper because Defendants have not shown that mandatory bar membership satisfies exacting First Amendment scrutiny.**

Defendants' motion to dismiss must fail with respect to Plaintiffs' Third Claim for Relief because Defendants have not even attempted to show that mandatory bar membership satisfies exacting scrutiny—i.e., that it "serve[s] a compelling state interest that cannot be achieved through means significantly less restrictive of associational freedoms." *Janus*, 138 S. Ct. at 2465

Plaintiffs' Response to
Defendants' Motion to Dismiss - 10

(citation omitted). For that reason alone, Defendants' motion to dismiss Plaintiffs' Third Claim for Relief must be denied.

Moreover, Oregon's membership requirement cannot survive exacting scrutiny because the state can achieve any legitimate goals related to "regulating the legal profession and improving the quality of legal services," *Keller*, 496 U.S. at 13, by "means significantly less restrictive of associational freedoms," *Janus*, 138 S. Ct. at 2465 (citation omitted), than mandatory bar membership.

On this point, *Janus*'s details are instructive. In *Janus*, the government argued that compelling public-sector workers to subsidize a union with mandatory fees was necessary to serve the state's interest in "labor peace." The "labor peace" theory held that compelling public-sector workers to subsidize a union was necessary because of the union's designation as workers' exclusive bargaining representative. Without compulsory union fees, the theory went, the union would not be able to act as the sole bargaining representative, and the result would be "pandemonium" caused by conflicts between different unions. *Id.* at 2465. *Janus* found that assumption to be "simply not true," *id.*, because, in fact, several federal entities and several states designate public-sector unions as exclusive representatives, and no such "pandemonium" has resulted. Therefore, it is "undeniable that 'labor peace' can be readily achieved 'through means significantly less restrictive of associational freedoms' than the assessment of agency fees" — and those fees cannot survive exacting scrutiny. *Id.* at 2466 (citation omitted).

As Plaintiffs have alleged in their Complaint, Oregon's mandatory bar fails exacting scrutiny for the same reason: the state can achieve its goals for the legal profession without mandating bar membership or dues. Compl. ¶ 86. It is obvious as a theoretical matter how the state could do so: by acting as a regulator, penalizing those who break the rules, and providing

educational services to ensure that practitioners know the rules—just as it already does for

countless other trades. And, in fact, some 19 states and Puerto Rico already regulate the practice

of law without requiring membership in a state bar association. This includes states with large

populations of lawyers, such as Massachusetts, New York, and New Jersey, and states with some

of the smallest bars, such as Vermont and Delaware.[3] *Id.* ¶ 87; Ralph H. Brock, *"An Aliquot*

*Portion of Their Dues:" A Survey of Unified Bar Compliance with Hudson and Keller*, 1 Tex.

Tech J. Tex. Admin. L. 23, 24 n.1 (2000).[4] If those states can regulate lawyers and improve the

quality of legal services without violating attorneys' First Amendment rights with a mandatory

bar, so can Oregon.

The Court therefore should deny Defendants' motion to dismiss Plaintiffs' Third Claim

for Relief.

> **2.    Plaintiffs have stated a First and Fourteenth Amendment claim challenging OSB's use of mandatory fees for non-chargeable activities without members' affirmative consent.**

The Court should deny Defendants' motion to dismiss with respect to Plaintiffs' Second

Claim for Relief, which states a valid First and Fourteenth Amendment claim challenging OSB's

use of mandatory member dues for non-chargeable activities without members' affirmative

consent. Compl. ¶¶ 73-79.

---

[3] There are 2,978 lawyers in Delaware and 2,227 in Vermont.  American Bar Association, *National Lawyer Population Survey 2018,* https://www.americanbar.org/content/dam/aba/administrative/market_research/National_Lawyer _Population_by_State_2018.pdf.

[4] This article from 2000 identifies 18 such states, but in 2013, Nebraska eliminated its mandatory membership requirement, noting that such requirements "present issues under the First Amendment…because members are required to join the group," which "'implicate[s] the First Amendment freedom of association, which includes the freedom to choose not to associate.'" *In re Petition for a Rule Change to Create a Voluntary State Bar of Nebraska*, 841 N.W.2d 167, 173 (Neb. 2013) (quoting *Kingstad v. State Bar of Wis.*, 622 F.3d 708, 712-13 (7th Cir. 2010)).

a.      **OSB cannot use an attorney's funds for political or ideological activities without obtaining the attorney's affirmative consent.**

In *Janus*, the Supreme Court reiterated that forcing a person to subsidize the political speech of another through mandatory fees violates the First Amendment. 138 S. Ct. at 2464. And *Janus* specifically rejected the idea that a public-sector union could charge workers an agency fee first and then give them the option of seeking a refund of amounts improperly used for political and ideological activity. *Id.* at 2486. The Court held that "[n]either an agency fee nor any other payment to [a] union may be deducted from a nonmember's wages, nor may any other attempt be made to collect such a payment, unless the employee *affirmatively consents* to pay." *Id.* (emphasis added).

Because mandatory bar fees entail the same infringement of First Amendment rights as the union fees at issue in *Janus, see Keller*, 496 U.S. at 12-17, a mandatory bar association must likewise obtain members' affirmative consent before using their money for political or ideological speech.

b.      **OSB uses attorneys' mandatory dues for political and ideological speech without their affirmative consent.**

OSB does not comply with *Janus*'s affirmative consent requirement: it charges dues to all attorneys as a condition of practicing law, regardless of whether they have freely consented in advance to join or pay. Compl. ¶¶ 26-28, 45. OSB then uses those dues to fund legislative and policy advocacy and other political and ideological speech. Compl. ¶¶ 35-44. For example, OSB used Plaintiffs' mandatory dues to fund its political and ideological speech without their affirmative consent when it published criticism of President Trump in its April 2018 *Bar Bulletin*. Compl. ¶¶ 41-45. Thus, OSB members have no way to avoid having their money used to support OSB's political and ideological speech.

Plaintiffs' Response to
Defendants' Motion to Dismiss - 13

There is no merit in OSB's argument that the *Bar Bulletin* statements were actually proper expenditures of mandatory dues. OSB argues that the first of the two statements was germane to improving the quality of legal services, and therefore constitutional, because it reminded lawyers "to safeguard the rule of law and to ensure its fair and equitable administration." MTD 19-20. But that is not all the statement said. Among other things, it also "condemn[ed] the proliferation of speech that [supposedly] incites … violence" and suggested that, notwithstanding the First Amendment, something must be done "to address speech" that supposedly "incites violence." Compl. Exh. A. Of course the extent to which free speech should be restricted because of its supposed tendency to incite violence is a highly controversial legal and political issue—and was a subject of much public debate in the wake of the Charlottesville events that the *Bar Bulletin* statements referenced. *See, e.g,* Alex Blasdel, *How the Resurgence of White Supremacy in the US Sparked a War Over Free Speech*, Guardian (May 31, 2018)[5] (describing debate within the ACLU and among others); Timothy E.D. Horley, *Rethinking the Heckler's Veto After Charlottesville*, 104 Va. L. Rev. Online 8 (2018)[6] (stating that "current doctrine provides no clear answer" on when government may limit speech that may provoke a violent response and proposing a new First Amendment standard); Katherine Mangu-Ward, *'No Free Speech for Fascists' Is a Truly Terrible Idea*, Reason (Aug. 14, 2017)[7] (criticizing calls for speech restrictions in response to Charlottesville events). Further, it appears that the OSB intended the first statement to be read in conjunction with the second statement, which OSB

---

[5] https://www.theguardian.com/news/2018/may/31/how-the-resurgence-of-white-supremacy-in-the-us-sparked-a-war-over-free-speech-aclu-charlottesville.

[6] http://www.virginialawreview.org/volumes/content/rethinking-hecklers-veto-after-charlottesville.

[7] https://reason.com/blog/2017/08/14/no-free-speech-for-fascists-is-a-bad-dan.

chose to publish next to it, which blames "the climate of violence, extremism and exclusion" on President Trump. Compl. Ex. A.

OSB disclaims any responsibility for the second statement, however, asserting that it was the "statement of seven affinity bars," not OSB or any Defendant, and that therefore "whether or not it was germane to promoting access to justice and the improvement of legal services is immaterial." MTD 20. Of course that is incorrect: regardless of who authored the statement, OSB chose to publish it using the dues of members who did not want to fund its publication.

Defendants also suggest that the second *Bar Bulletin* statement was constitutionally permissible because, "taken as a whole," it "announces its support for the [first] Statement" and for OSB's commitment to non-discrimination and access to justice. *Id.* First, as a factual matter, that is not true: the statement's longest paragraph (of four) is entirely devoted to criticizing the President, and another paragraph calls on the President to take certain actions. Compl. Exh. A. More importantly, OSB's "as a whole" standard lacks any basis in the law. The OSB cannot use member dues for political speech by sandwiching that speech between other material—the First Amendment prohibits OSB from using any amount of mandatory fees for any amount of political or ideological speech. *See Hudson*, 475 U.S. at 305 ("[W]hatever the amount, the quality of [individuals'] interest in not being compelled to subsidize the propagation of political or ideological views that they oppose is clear.").

Finally, there is no merit in Defendants' assertion that Plaintiffs' objection to OSB's legislative and political advocacy is insufficiently specific. MTD 21. The Complaint is clear enough: it alleges that OSB engages in legislative and policy advocacy in accordance with Guidelines it has adopted Compl. ¶¶ 35-36; it alleges that the Guidelines do not distinguish between germane and non-germane activities or establish any procedures to ensure that OSB's

expenditures are germane *Id.*  ¶¶ 37-38; and it states that Plaintiffs object to paying for *any* of

OSB's legislative and policy advocacy *Id.*  ¶¶ 54, 56. And to be clear, Plaintiffs object to paying

for *any* legislative and policy advocacy by OSB, whether "germane" or not, because, as

discussed below, forced funding of any such advocacy cannot survive First Amendment scrutiny.

> ### c.  Dismissal is improper because Defendants have not shown that mandatory bar dues satisfy exacting First Amendment scrutiny.

Defendants argue that the OSB does not have to obtain members' affirmative consent

before using their mandatory dues for political and ideological speech; according to Defendants,

the Constitution only requires the OSB to give objecting members a refund after it misuses their

dues. Defendants argue that "*Keller*, not *Janus*, describes the constitutional protections afforded

members of an integrated bar" and that allowing members to obtain a refund is sufficient under

*Keller* according to the Ninth Circuit's decision in *Morrow v. State Bar of California*, 188 F.3d

1174, 1175 (9th Cir. 1999). MTD 18-19.

As an initial matter, as explained in Plaintiffs' First Claim for Relief and part 3 below,

OSB doesn't actually provide the constitutional protections *Keller* prescribed—which require

OSB to do more than just provide objectors an after-the-fact refund. *See* Compl. ¶¶ 61-72; *infra*

at 19.

Further, to the extent that *Keller* condoned using attorneys' mandatory dues for political

or ideological speech without their affirmative consent, *Janus* has superseded it. Again, *Janus*

held that courts must apply at least "exacting scrutiny," if not strict scrutiny, to laws forcing

individuals to subsidize an organization's political speech. 138 S. Ct. at 2465. That means a

forced subsidy "must 'serve a compelling state interest that cannot be achieved through means

significantly less restrictive of associational freedoms.'" *Id.* (citation omitted).

Plaintiffs' Response to
Defendants' Motion to Dismiss - 16

In applying this rule to mandatory public-sector union fees, *Janus* overruled *Abood*, which condoned such fees to pay for expenses germane to the union's bargaining on employees' behalf. 138 S. Ct. at 2486. The Court overruled *Abood* because it "judged the [fees'] constitutionality … under a deferential standard that finds no support in [the Court's] free speech cases"—in other words, *Abood* failed to "independently evaluate the strength of the government interests that were said to support the challenged agency-fee provision" or to "ask how well that provision actually promoted those interests or whether they could have been adequately served without impinging so heavily on the free speech rights of nonmembers." *Id.* at 2479-80. And, as discussed above, the *Janus* Court concluded that mandatory union fees could not survive exacting scrutiny because the government did not show that they were necessary to serve its interest in labor peace. *Id.* at 2466. It held that the only way to avoid violating workers' First Amendment rights is to not take union fees from them without their affirmative consent. *Id.* at 2486.

*Keller*'s approval of mandatory bar fees was premised on *Abood*'s validity. *See Keller*, 496 U.S. at 9-17. The *Keller* Court found "a substantial analogy between the relationship of the State Bar and its members, on the one hand, and the relationship of employee unions and their members on the other." *Id.* at 12. And it concluded that, if a union could require workers to pay fees germane to its bargaining activity under *Abood*, then a bar association could likewise require attorneys to pay for activities germane to "regulating the legal profession and improving the quality of legal services." *Id.* at 13-14.

Thus, with *Abood* overruled, there is no foundation for *Keller*'s toleration of bar associations using mandatory dues for political or ideological speech without a member's advance affirmative consent. Like *Abood*, *Keller* never subjected mandatory fees to the exacting

Plaintiffs' Response to
Defendants' Motion to Dismiss - 17

scrutiny the First Amendment requires. *Cf. Janus*, 138 S. Ct. at 2479-80. Those fees cannot survive exacting scrutiny because, as discussed above in part 1, the government can regulate the legal profession and improve the quality of legal services without forcing lawyers to join or pay a bar association. And, in any event, Defendants have not shown at this stage that the OSB's use of fees without affirmative consent survives exacting scrutiny—and therefore they are not entitled to dismissal of Plaintiffs' Second Claim for Relief.

### 3. Plaintiffs have stated a First and Fourteenth Amendment claim challenging OSB's lack of safeguards to ensure member fees are not used for non-germane activities.

The Court should deny Defendants' motion to dismiss with respect to Plaintiffs' First Claim for Relief, which challenges OSB's lack of safeguards to ensure that members' mandatory dues are not used for political and ideological speech and other non-germane activities (assuming, in the alternative to Plaintiffs' other claims, that mandatory bar membership and dues are permissible at all). Compl. ¶¶ 61-72.

In *Keller*, the Supreme Court held that mandatory bar dues may only be used for activities "germane" to "regulating the legal profession and improving the quality of legal services." 496 U.S. at 13-14. The Court held that using mandatory dues to "fund activities of an ideological nature which fall outside of those areas of activity" violates members' First Amendment right to freedom of speech and association. *Id.* at 14.

Under *Keller*, a bar association can meet its constitutional obligation to ensure that members are not forced to pay for such non-germane activities by providing: (1) "an adequate explanation of the basis for the [mandatory bar association] fee"; (2) "a reasonably prompt opportunity to challenge the amount of the fee before an impartial decisionmaker"; and (3) "an escrow for the amounts reasonably in dispute while such challenges are pending." *Id.* at 16. This

is the same "minimum set of procedures" the Supreme Court prescribed for public-sector unions—to ensure that non-members' mandatory union fees were not used for political or ideological activity not germane to the union's representation activities—in *Chicago Teachers Union v. Hudson*, 475 U.S. 292 (1986). *Keller* left open the question of "whether one or more alternative procedures would likewise satisfy" a bar association's constitutional obligation, 496 U.S. at 17—but in the three decades since *Keller*, the Court has not identified a satisfactory alternative to *Hudson*'s minimum.

Plaintiffs have alleged that OSB fails to satisfy the first *Hudson* requirement: it does not provide members with an explanation of how their mandatory dues amount is calculated. Compl. ¶ 66. Indeed, Plaintiffs allege that OSB publishes no information about whether or how it determines whether a given allocation of funds was for purposes germane to improving the quality of legal services and regulating attorneys. *Id.* ¶ 34. OSB therefore provides its members with no way to know how the OSB determines what portion of its expenses are chargeable to members as part of their mandatory dues; it "leav[es members] in the dark about the source of" their mandatory dues amount. *Hudson*, 475 U.S. at 306. And by denying members information about how their dues are calculated, it denies them a meaningful opportunity to challenge the calculation of their dues amount and protect their First Amendment rights. *See id.*

Further, OSB's Bylaws do not satisfy the second *Hudson* requirement: they do not provide for an escrow for amounts reasonably in dispute while a member's challenge to an expenditure is pending. *See Keller*, 496 U.S. at 16.

OSB asserts that it is enough that OSB offers members an opportunity to object to particular expenditures and obtain a refund after the fact. MTD 14-15. But *Hudson* makes clear that is not enough: even where a refund is available and funds are escrowed, the bar association

must explain its fee in advance. *Hudson*, 475 U.S. at 309. This is "required because the [mandatory fee] itself impinges on … First Amendment interests, and because the [member] has the burden of objection." *Id*. Requiring *advance* justification of the bar fee is "necessary to minimize both the impingement and the burden." *Id.* And placing at least a portion of an objecting member's dues in an interest-bearing escrow account is necessary to ensure that a member's dues are not "temporarily used for impermissible purposes." *Id.*

Contrary to Defendants' repeated assertions, the Ninth Circuit has *not* held that a bar association can satisfy its First Amendment obligations simply by offering members the opportunity to seek a refund after it misuses their dues. MTD 15, 17, 18. In the case Defendants rely on for this point, the court noted that the plaintiffs, who sued the State Bar of California, did "not complain about how the State Bar spen[t] their mandatory dues" and that, "[i]n compliance with the Supreme Court's decision in *Keller*, the State Bar allow[ed] members to seek a refund of the proportion of their dues that the State Bar has spent on political activities unrelated to its regulatory function." *Morrow*, 188 F.3d at 1175. These statements—which appear in *Morrow*'s background section and are not part of its legal analysis—are not even dicta for Defendants' position. *Morrow* suggests, in passing, that a refund is at least *part* of what *Keller* requires; it does not suggest, much less hold, that a refund is *all* that *Keller* requires. Again, *Keller* itself did not say that a refund alone would suffice, but rather pointed to *Hudson*'s procedures as satisfying the constitutional minimum. *See Keller*, 496 U.S. at 17.

Finally, Defendants' assertions about the OSB's supposedly adequate procedures for refunds and arbitration depend on facts outside the complaint and therefore cannot serve as a basis for dismissal under Rule 12(b)(6). *See* MTD 15-17. Defendants are correct that the Court may take judicial notice of the OSB's bylaws—i.e., the Court may take notice that the bylaws

exist and say what they say. *Id.* at 7 n.6. But the mere existence of those bylaws does not prove that Defendants actually *apply* them, or apply them in a manner that sufficiently protects members' First Amendment rights. And Plaintiffs have alleged that the OSB does not afford members an adequate opportunity to dispute the misuse of their dues. Compl. ¶ 67. At this stage, the Court must accept those allegations as true and cannot consider factual matters outside the Complaint.

Because the Plaintiffs' allegations, if true, would establish that Defendants are failing to provide adequate safeguards for OSB members' First Amendment rights, the Court should deny Defendants' motion to dismiss with respect to Plaintiffs' First Claim for Relief.

## B.   The Oregon State Bar is not entitled to Eleventh Amendment immunity.

The OSB is not an "arm of the state" entitled to Eleventh Amendment immunity and therefore is not entitled to dismissal under Rule 12(b)(1). *See* MTD 7.

Although state agencies are generally immune from suit in federal court, "an entity may be organized or managed in such a way that it does not qualify as an arm of the state entitled to sovereign immunity." *Durning v. Citibank, N.A.*, 950 F.2d 1419, 1423 (9th Cir. 1991). To determine whether an entity is an arm of the state, courts in this Circuit apply the five-factor test first articulated in *Mitchell v. L.A. Cmty. Coll. Dist.*, 861 F.2d 198, 201 (9th Cir. 1988). [8] *See,*

---

[8] Cases Defendants have cited in which a bar association was described as an arm of the state (MTD 8-9) did not perform the required *Mitchell* analysis and in any event are not binding regarding OSB's entitlement to Eleventh Amendment immunity here. *See Hirsh v. Justices of Sup. Ct. of Cal.*, 67 F.3d 708, 715 (9th Cir 1995); *Ginter v. State Bar of Nev.*, 625 F2d 829, 830 (9th Cir 1980); *Eugster v. Wash. State Bar Ass'n*, No. C15-0375JLR, 2015 WL 5175722, at *9 (W.D. Wash. Sept. 3, 2015), *aff'd on other grounds* 684 Fed. App'x 618 (9th Cir 2017); *Hartfield v. Or. State Bar*, No. 3:16-cv-00068-ST, 2016 WL 9225978, at *1 (D. Or. Jan. 15, 2016), *report and recommendation adopted* 2016 WL 9226386 (D. Or. Feb. 16, 2016), *aff'd on other grounds* 671 F App'x 456 (9th Cir 2016); *Coultas v. Payne*, No. 3:12-cv-1132-AC, 2012 WL 6725845, at *3 (D. Or. Nov. 27, 2012), *report and recommendation adopted* 2012 WL 6726247, at *1 (D. Or. Dec. 27, 2012); *Weidner v. Albertazzi*, No. 06-930-HO, 2006 WL

*e.g., Beentjes v. Placer Cnty. Air Pollution Control Dist.*, 397 F.3d 775, 778 (9th Cir. 2005) ("In the Ninth Circuit, we employ a five-factor test to determine whether an entity is an arm of the state[.]"); *Holz v. Nenana City Pub. Sch. Dist.*, 347 F.3d 1176, 1181 (9th Cir. 2003) ("These factors must be analyzed in light of the way [state] law treats the governmental agency") (internal marks and citation omitted). Under the *Mitchell* test, 861 F.2d at 201, a court must weigh five factors:

> [1] whether a money judgment would be satisfied out of state funds, [2] whether the entity performs central governmental functions, [3] whether the entity may sue or be sued, [4] whether the entity has the power to take property in its own name or only the name of the state, and [5] the corporate status of the entity.

In this case, all five factors weigh *against* Eleventh Amendment immunity for the OSB.

### 1.    A money judgment against the OSB would not be satisfied out of state funds.

The first *Mitchell* factor weighs against immunity because a judgment against the OSB would not be satisfied out of state funds. "When a state entity is structured so that its obligations are its own special obligations and not general obligations of the state, that fact weighs against a finding of sovereign immunity." *Durning,* 950 F.2d at 1425–26; *see also Hyland v. Wonder,* 117 F.3d 405, 414 (9th Cir. 1997) (defendants not immune under Eleventh Amendment when they did not present "any evidence that the state would be liable for the judgment").

The Supreme Court and the Ninth Circuit have consistently found the first *Mitchell* factor to be the most important: Because "the impetus for the Eleventh Amendment [is] the prevention of federal-court judgments that must be paid out of a state's treasury … the vulnerability of the State's purse [is] the most salient factor in Eleventh Amendment determinations." *Hess v. Port*

---

2987704, at *1 (D. Or. Oct. 13, 2006); *Erwin v. Or. ex rel. Kitzhaber*, 231 F. Supp. 2d 1003, 1007 (D. Or. 2001), *aff'd on other grounds* 43 Fed. App'x 122 (9th Cir. 2002).

*Auth. Trans–Hudson Corp.,* 513 U.S. 30, 48 (1994) (citations omitted); *see also Savage v. Glendale Union High Sch., Dist. No. 205,* 343 F.3d 1036, 1041 (9th Cir. 2003) ("[T]he first *Mitchell* factor is the most important component in establishing Eleventh Amendment immunity." (citation omitted)); *Durning*, 950 F.2d at 1424 (same).

Here, this most important factor weighs against immunity because, as Defendants admit, the State of Oregon would have no legal obligation to satisfy a judgment against the OSB. MTD 10. By statute, "[n]o obligation of any kind incurred or created [by the OSB] shall be, or be considered, an indebtedness or obligation of the State of Oregon." ORS 9.010(6). Oregon law also prevents the State from utilizing or controlling OSB funds: "All [OSB member] fees shall be paid into the treasury of the Oregon State Bar, and when so paid shall become part of [the OSB's] funds and shall be disbursed only on order of the board of governors," ORS 9.070, which, in turn, "may make appropriations and disbursements from the funds of the bar and pay all necessary expenses." ORS 9.090. *See also* 44 Or. Op. Att'y Gen. 336 (1985) (finding that the OSB's funds are not state fiscal resources and are not money or property belonging to the state, and that the state has no proprietary interest in those funds).

### 2.    The OSB does not perform central governmental functions.

The second *Mitchell* factor also weighs against immunity because the OSB performs independent corporate functions with minimal state control. "In assessing the second *Mitchell* factor—whether the entity performs a central governmental function—[a court] evaluate[s] whether the [entity] addresses a matter of statewide rather than local or municipal concern, and the extent to which the state exercises centralized governmental control over the entity." *Beentjes,* 397 F.3d at 782 (internal marks and citations omitted). Where some of an entity's activities may involve a central government role but others do not, this factor may not weigh for

or against immunity. *See, e.g., Gressett v. Cent. Ariz. Water Conservation Dist.*, No. CV 12-00185-PHX-JAT, 2012 WL 3028347, at *3 (D. Ariz. July 24, 2012) (because of entities' dual role—"[i]n some ways … act[ing] in a central government role" but also conducting activities "not usually assigned to the central government[,]" the second *Mitchell* factor did not indicate whether defendant should be treated as an arm of the state).

*Keller* recognized that a bar association is *not* a typical government agency, does not perform key governmental functions related to regulating the practice of law, and therefore is not entitled "to the treatment accorded a governor, a mayor, or a state tax commission" under federal constitutional law. 496 U.S. at 11. The Court observed that the State Bar of California—a defendant in *Keller*, notwithstanding the Eleventh Amendment—"is a good deal different from most other entities that would be regarded in common parlance as 'governmental agencies.'" *Id*. It is funded primarily by members, not taxpayers, and its "services," however valuable, "are essentially advisory in nature": it "does not admit anyone to the practice of law, it does not finally disbar or suspend anyone, and it does not ultimately establish ethical codes of conduct" because "those functions are reserved by California law to the State Supreme Court." *Id.*

It is the same in Oregon: while the OSB may make recommendations, the Oregon Supreme Court is not bound to accept them and is the body actually responsible for admitting attorneys (ORS 9.210(2), 9.250), accepting attorney resignations (ORS 9.261), adopting rules of professional conduct (ORS 9.490), approving application fees (ORS 9.210(3)), disciplining attorneys (ORS 9.536), and approving rules of procedure investigations of attorneys and bar applicants (ORS 9.542). Further, criteria for bar admission and attorney discipline are set by statute, not by the OSB. *See* ORS 9.220, 9.527.

Otherwise, the OSB mostly conducts its activities independently, not under centralized state control. It has complete autonomy in determining how the OSB's general responsibilities are carried out, which weighs against a finding that it performs a "centralized governmental function." *See, e.g., Beentjes*, 397 F.3d at 783 & n.9; *Wojcik v. Mass. State Lottery Comm'n,* 300 F.3d 92, 101 (1st Cir. 2002) (assessing, among other things, "whether the state exerts control over the agency, and if so, to what extent" (citation omitted)). OSB acts under the management and control of its Board of Governors—elected by OSB's active members—not the state. ORS 9.025, 9.040. The Board appoints the OSB's Chief Executive Officer. ORS 9.055. The Board is charged with the executive functions of the OSB, and the Board has the power to adopt, alter, amend, and repeal bylaws related to the regulation and management of the OSB. ORS 9.080. Under the Board's supervision (alone), the OSB's CEO implements, administers, and supervises the OSB's operation and program activities. OSB Bylaw § 2.1(a). The Board operates as a review body, a supervisor of top management performance and a representative body of all members. Bylaws § 2.1(b). The Board may amend the OSB's responsibilities and Bylaws without Judicial Department review or concurrence. *See* Bylaws § 29. The Oregon Supreme Court does appoint a professional responsibility board that institutes the OSB's disciplinary proceedings (ORS 9.532, 9.534), as well as a board of bar examiners (ORS 9.210(1)), but it does not control those boards' operation.

Because the ultimate *governmental* authority for regulating the legal profession lies with the Oregon Supreme Court, not OSB, and the OSB acts independently of the state in exercising its own functions, the second *Mitchell* factor weighs against a finding of immunity.

### 3.    The OSB may sue and be sued.

The third *Mitchell* factor weighs against immunity because, as stated in ORS 9.010(5), the OSB may sue and be sued. *See Eason v. Clark Cnty. Sch. Dist.*, 303 F.3d 1137, 1144 (9th Cir. 2002) (ability to sue and be sued "weigh[ed] slightly against holding that [a school district was] an arm of the state").

True, as Defendants say, an entity's ability to be sued in state court does not necessarily automatically waive Eleventh Amendment immunity. MTD 10. But a waiver of Eleventh Amendment immunity is not necessary for this factor to weigh against immunity. After all, if a statute expressly waived an entity's Eleventh Amendment rights, there would no reason to analyze the *Mitchell* factors at all.

Defendants receive no help from the cases they cite in their discussion of this factor, *Estate of Pond v. Oregon*, 322 F. Supp. 2d 1161 (D. Or. 2004), and *Belanger v. Madera Unified School District*, 963 F.2d 248 (9th Cir 1992). MTD 10. In *Estate of Pond*, the Court did not apply the *Mitchell* test, or discuss its third factor, because it didn't need to: the named defendant was the State of Oregon itself, which, in the absence of a waiver, is always entitled to Eleventh Amendment immunity for tort claims such as the ones the plaintiffs in that case raised. In *Belanger*, the court found that a California statute allowing school districts to sue and be sued "militate[d] against a finding of Eleventh Amendment immunity." 963 F.2d at 254.

### 4.    The OSB may take property in its own name, not the name of the state.

The fourth *Mitchell* factor weighs against immunity because the OSB has the power and authority to acquire property. *See, e.g., Beentjes*, 397 F.3d at 784 (statute allowing school district to purchase, gift, devise, or lease real or personal property "weigh[ed] in favor of finding that the District is not an arm of the state").

Plaintiffs' Response to
Defendants' Motion to Dismiss - 26

By statute, the OSB "may, in its own name ... enter into contracts and lease, acquire, hold, own, encumber, insure, sell, replace, deal in and with and dispose of real and personal property." ORS 9.010(5). This means that the OSB may acquire property and collect fees in its own name, which remain solely the OSB's, maintained separately from the State for the use of the OSB, and create no State proprietary interest. *See* 44 Or. Op. Att'y Gen. 336 (1985). Further, the OSB is not subject to the statute that requires state agencies to remit funds to the State Treasurer, ORS 293.265. *See* ORS 9.010(3), (4). And the State may not otherwise take possession of or control the OSB's funds; the Board alone (i.e., OSB itself) exclusively controls all disbursement of OSB funds. ORS 9.070(2), 9.090.

Defendants contend that the OSB may not freely use all property it possesses. Specifically, Defendants say "the Uniform Disposition of Unclaimed Property Act allows the Bar to take possession of abandoned client funds held in lawyers' trust accounts, but directs these funds to the state's Legal Services Program." MTD 11. But that only imposes certain responsibilities on OSB in exchange for receiving certain abandoned client funds; it does not bear on OSB's ability to take and own property generally, and it does not make any funds in OSB's possession the property of the state. Again, OSB's discretion with regard to its own funds, paid by member fees, is not limited.

### 5.    The OSB's corporate status weighs against immunity.

The final *Mitchell* factor—corporate status—also weighs against immunity because the OSB is not the state government, a public body, or part of the Judicial Department; rather, it is a "special government body" distinct from the State. 861 F.2d at 201.

"The final *Mitchell* factor is concerned with the extent to which … an entity [is] distinct from the state." *Beentjes*, 397 F.3d at 784. Whether an entity is to be treated as an arm of the

Plaintiffs' Response to
Defendants' Motion to Dismiss - 27

State, partaking of the State's Eleventh Amendment immunity, or, on the contrary, as an entity to which the Eleventh Amendment does not extend, turns in part on the nature of the entity created by state law. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977).

The OSB is a creature of statute, designated a "public corporation and an instrumentality of the Judicial Department of the government of the State of Oregon." ORS 9.010(2). The Bar is not state government, a public body, or the Judicial Department. *See* ORS 174.111, 174.109, 174.113. Rather, as "[a] public corporation created under a statute of this state and specifically designated as a public corporation," it is a "special government body." ORS 174.117(1).

Other examples of special government bodies include school districts, education service districts, intergovernmental bodies formed by two or more public bodies, and entities created by statute, ordinance or resolution that are not part of state or local government. ORS 174.117(1). Inclusion of OSB as a special government body is telling: in general, special government bodies are more localized or otherwise separate and distinct from state government—i.e., the very kinds of entities that do not enjoy Eleventh Amendment immunity. *See, e.g., Beentjes*, 397 F.3d 775 (county air pollution control district not an arm of the state); *Savage*, 343 F.3d 1036 (school district not an arm of the state); *Eason*, 303 F.3d 1137 (same); *Durning*, 950 F.2d 1419 (statutorily created Community Development Authority not an arm of the state); *Stewart v. Baldwin Cnty. Bd. of Educ.*, 908 F.2d 1499 (11th Cir. 1990) (county school board not an arm of the state).

The OSB is exempt from most requirements of state agencies, departments, boards, commissions, and public bodies. *See* ORS 9.010(4). Again, OSB is supervised by its Board and enforces the Board's Bylaws. Further, the OSB's employees are not state employees. *See* ORS

9.080(4) ("Except as provided in this subsection, an employee of the state bar shall not be considered an 'employee' as the term is defined in the public employees' retirement laws.").[9]

Again, minimal state control over an entity points towards independence from the state. *See Beentjes*, 397 F.3d at 785 ("As the district court properly noted, the State exercises little control over the structure and operation of the districts, which suggests that districts function independently from the State") (internal quotations omitted)). And, as the Supreme Court has observed, a mandatory bar association may be more analogous to a labor union than to *any* kind of governmental unit. *See Keller*, 496 U.S. at 11.

Therefore, the final *Mitchell* factor—like all of the other *Mitchell* factors—weighs against a finding of Eleventh Amendment immunity for the OSB.

### C.     Defendants' qualified immunity argument is moot because Plaintiffs do not seek damages against the individual Defendants.

Defendants' argument that the individual Defendants are entitled to qualified immunity with respect to Plaintiffs' claims for damages (MTD 21-23) is moot because Plaintiffs do not intend to seek damages from the individual Plaintiffs. For their damages, Plaintiffs Crowe and Peterson simply seek to have the OSB refund their dues payments. Against the individual Defendants, Plaintiffs seek only declaratory and injunctive relief, which qualified immunity does not bar. *See Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 527 (9th Cir.1989).

---

[9] For example, the state does not list the individual Defendants in this case as state employees with respect to their positions with the OSB or its Board. *State Employee List (Alphabetical),* available at https://dasapp.oregon.gov/statephonebook/personnellisting.pdf.

      **D.**      **Plaintiffs do not oppose dismissal of the Oregon State Bar Board of Governors.**

Plaintiffs do not oppose dismissal of Defendant Oregon State Bar Board of Governors on the basis that it is not a legal entity separate from the Oregon State Bar and has no capacity to be sued. *See* MTD 23.

## V.      CONCLUSION

The Court should deny Defendants' motion to dismiss Plaintiffs' First and Fourteenth Amendment claims.

Dated: January 30, 2019

                                           Respectfully submitted,

                                         /s/ Luke D. Miller
                                         Luke D. Miller, OSB No. 175051
Military Disability Lawyer, LLC
1567 Edgewater St. NW
PMB 43
Salem, OR 97304
Telephone: (800) 392-5682
Fax: (503) 779-1091
luke@militarydisabilitylawyer.com

/s/ Jacob Huebert
Jacob Huebert (*pro hac vice*)
Aditya Dynar (*pro hac vice*)
Goldwater Institute
Scharf-Norton Center for Constitutional Litigation
500 E. Coronado Rd.
Phoenix, AZ 85004
Telephone: (602) 462-5000
Fax: (602) 256-7045
litigation@goldwaterinstitute.org

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

Document Electronically Filed and Served by ECF this 30th day of February, 2019 to:

Steven M. Wilker
Megan Houlihan
TONKON TORP LLP
888 SW Fifth Avenue, 16th Fl.
Portland, OR  97204
Steven.wilker@tonkon.com
Meg.houlihan@tonklon.com
*Attorneys for Defendants*

W. Michael Gillette
SCHWABE, WILLIAMSON & WYATT, P.C.
1211 SW 5th Ave., Ste. 1900
Portland, OR 97204
wmgillette@schwabe.com
*Attorneys for Defendants*

                                   /s/ Kris Schlott
                                   Kris Schlott, Paralegal
                                   **Scharf-Norton Center for Constitutional Litigation**
                                   **at the GOLDWATER INSTITUTE**

Plaintiffs' Response to
Defendants' Motion to Dismiss - 31