UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

DIANE L. GRUBER and MARK RUNNELS,

                Plaintiffs,

      v.

OREGON STATE BAR, a public
corporation; CHRISTINE COSTANTINO,
President of the Oregon State Bar; HELEN
HIERSCHBIEL, Chief Executive Officer of
the Oregon State Bar,

                Defendants.

3:18-cv-1591-JR

FINDINGS & RECOMMENDATION

Page 1 - FINDINGS & RECOMMENDATION

DANIEL Z CROWE; LAWRENCE K
PETERSON; OREGON CIVIL LIBERTIES
ATTORNEYS, an Oregon Nonprofit
Corporation,

                    Plaintiffs,

           v.

OREGON STATE BAR, a public
corporation; OREGON STATE BAR
BOARD OF GOVERNORS; VANESSA
NORDYKE, President of the Oregon State Bar
Board of Governors; CHRISTINE
COSTANTINO, President-elect of the
Oregon State Bar Board of Governors;
HELEN HIERSCHBIEL, Chief Executive
Officer of the Oregon State Bar, KEITH
PALEVSKY, Director of Finance and
Operations of the Oregon State Bar; AMBER
HOLLISTER, General Counsel for the Oregon
State Bar,

                  Defendants.

3:18-cv-2139-JR

FINDINGS & RECOMMENDATION

RUSSO, Magistrate Judge:

      In these two related cases, members of the Oregon State Bar (Bar) challenge the mandatory

nature of the Bar's membership and compulsory fee structure.  Both cases name the Bar as well as

the Bar's president and chief executive officer as defendants.  Case number 18-2139-JR, also names

the Oregon State Bar Board of Governors, the Bar's director of finance and operations, and the Bar's

general counsel as defendants.

      In case number 18-1591-JR, plaintiffs Bar members Diane Gruber and Mark Runnels seek

a declaration that compulsory Bar membership dues violate the First and Fourteenth Amendments

of the United States Constitution.  Alternatively, these plaintiffs seek damages to the extent the Bar

failed to reduce the dues which plaintiffs are compelled to pay for the Bar's political or ideological

Page 2 - FINDINGS & RECOMMENDATION

activities in violation of the First and Fourteenth Amendments.

In case number 18-2139-JR, plaintiffs Bar members Daniel Crowe, Lawrence Peterson, and Oregon Civil Liberties Attorneys similarly assert claims that the Bar violates their constitutional rights by requiring membership in the Bar to practice law, using their membership fees for political speech without consent, and failing to implement safeguards to prevent the Bar from engaging in political advocacy.

Defendants move to dismiss the respective actions. Plaintiffs Gruber and Runnels move for partial summary judgment in case number 18-1591-JR. The Oregon Attorney General submitted an amicus curiae memorandum in support of the Bar's position that the cases should be dismissed. The court heard argument on March 13, 2019. The motions to dismiss should be granted and the motion for partial summary judgment should be denied.

<u>ALLEGATIONS</u>

A.    <u>Gruber v. Oregon State Bar (18-1591-JR)</u>

Plaintiffs allege they are compelled to pay various fees, assessments, and dues as a condition of engaging in the State regulated legal profession. First Amended Complaint (doc. <u>39</u>) at ¶ 5. Plaintiffs further allege the Bar engages in political and ideological activities with which they do not agree such as issuing the following statement in the April 2018 Oregon State Bar Bulletin:

## Statement on White Nationalism and Normalization of Violence

As the United States continues to grapple with a resurgence of white nationalism and the normalization of violence and racism, the Oregon State Bar remains steadfastly committed to the vision of a justice system that operates without discrimination and is fully accessible to all Oregonians. As we pursue that vision during times of upheaval, it is particularly important to understand current events through the lens of our complex and often troubled history. The legacy of that history was seen last year in the streets of Charlottesville, and in the attacks on Portland's MAX train. We unequivocally condemn these acts of violence.

We equally condemn the proliferation of speech that incites such violence. Even as we celebrate the great beneficial power of our First Amendment, as lawyers we also know it is not limitless. A systemic failure to address speech that incites violence emboldens those who seek to do harm, and continues to hold historically oppressed communities in fear and marginalization.

As a unified bar, we are mindful of the breadth of perspectives encompassed in our membership. As such, our work will continue to focus specifically on those issues that are directly within our mission, including the promotion of access to justice, the rule of law, and a healthy and functional judicial system that equitably serves everyone. The current climate of violence, extremism and exclusion gravely threatens all of the above. As lawyers, we administer the keys to the courtroom, and assist our clients in opening doors to justice. As stewards of the justice system, it is up to us to safeguard the rule of law and to ensure its fair and equitable administration. We simply cannot lay claim to a healthy justice system if whole segments of our society are fearful of the very laws and institutions that exist to protect them.

In today's troubling climate, the Oregon State Bar remains committed to equity and justice for all, and to vigorously promoting the law as the foundation of a just democracy. The courageous work done by specialty bars throughout the state is vital to our efforts and we continue to be both inspired and strengthened by those partnerships. We not only refuse to become accustomed to this climate, we are intent on standing in support and solidarity with those historically marginalized, underrepresented and vulnerable communities who feel voiceless within the Oregon legal system.

Id at ¶ 6 and p. 8.

The Bar also published in the same issue the following statement by the Oregon Specialty

Bar Associations:

### Joint Statement of the Oregon Specialty Bar Associations Supporting the Oregon State Bar's Statement on White Nationalism and Normalization of Violence

The Oregon Asian Pacific American Bar Association, the Oregon Women Lawyers, the Oregon Filipino American Lawyers Association, OGALLA-The LGBT Bar Association of Oregon, the Oregon Chapter of the National Bar Association, the Oregon Minority Lawyers Association, and the Oregon Hispanic Bar Association support the Oregon State Bar's Statement on White Nationalism and Normalization of Violence and its commitment to the vision of a justice system that operates without discrimination and is fully accessible to all Oregonians.

Through the recent events from the Portland MAX train attacks to Charlottesville, we have seen an emboldened white nationalist movement gain momentum in the United States and violence based on racism has become normalized. President Donald Trump, as the leader of our nation, has himself catered to this white nationalist movement, allowing it to make up the base of his support and providing it a false sense of legitimacy. He has allowed this dangerous movement of racism to gain momentum, and we believe this is allowing these extremist ideas to be held up as part of the mainstream, when they are not. For example, President Trump has espoused racist comments, referring to Haiti and African countries as "shithole countries" and claiming that the United States should have more immigrants from countries like Norway. He signed an executive order that halted all refugee admissions and barred people from seven Muslim-majority countries, called Puerto Ricans who criticized his administration's response to Hurricane Maria "politically motivated ingrates," said that the white supremacists marching in Charlottesville, North Carolina in August of 2017 were "very fine people," and called into question a federal judge, referring to the Indiana-born judge as "Mexican," when the race of his parents had nothing to do with the judge's decision. We are now seeing the white nationalist movement grow in our state and our country under this form of leadership.

As attorneys who lead diverse bar associations throughout Oregon, we condemn the violence that has occurred as a result of white nationalism and white supremacy. Although we recognize the importance of the First Amendment of the United States Constitution and the protections it provides, we condemn speech that incites violence, such as the violence that occurred in Charlottesville. President Trump needs to unequivocally condemn racist and white nationalist groups. With his continued failure to do so, we must step in and speak up.

As attorneys licensed to practice law in Oregon, we took an oath to "support the Constitution and the laws of the United States and of the State of Oregon." To that end, we have a duty as attorneys to speak up against injustice, violence, and when state and federal laws are violated in the name of white supremacy or white nationalism. We must use all our resources, including legal resources, to protect the rights and safety of everyone.  We applaud the Oregon State Bar's commitment to equity and justice by taking a strong stand against white nationalism. Our bar associations pledge to work with the Oregon State Bar and to speak out against white nationalism and the normalization of racism and violence.

Plaintiffs assert collection of compulsory fees, although authorized by Oregon statute, violates their rights under the First and Fourteenth Amendments to free speech, petition, and association. Id. at ¶¶ 16-18. In the alternative, plaintiffs assert defendants violated their First and Fourteenth Amendment rights by failing to reduce their dues for political or ideological activities of the Bar.

B.    Crowe v. Oregon State Bar (18-2139-JR)

Plaintiffs Crowe, Peterson, and the Oregon Civil Liberties Attorneys allege the State of Oregon requires attorneys to join and pay fees to the Bar association in order to practice law in the State. Complaint (doc. 1) at ¶2. Plaintiffs further allege a mandatory bar association such as Oregon's must implement safeguards to ensure members' dues are used only for the narrow purpose of improving the quality of legal services through the regulation of attorneys and not for political advocacy. Id. at ¶ 3. Plaintiffs further assert mandatory bars must fund their political advocacy with money paid by individuals who affirmatively consent to having their money used for that purpose. Id. at ¶ 4

Plaintiffs allege the Bar uses mandatory member fees to fund political speech without first obtaining members' consent. Id. at ¶ 5. Plaintiffs assert the Bar does not publish information regarding the method for determining whether a given allocation of funds was used for purposes germane to "improving the quality of legal services and regulating attorneys." Id. at ¶34. Moreover, plaintiffs assert the Bar uses mandatory member fees to engage in legislative and policy advocacy which are not germane to the Bar's purpose. Id. at ¶¶ 35-40.

Plaintiffs specifically object to the Bar's April 2018 statement as noted above. Plaintiffs assert that statement constitutes political speech and they do not agree with the "explicit and implicit

criticism of ... President Trump" resulting from the inclusion of the Speciality Bars' subsequent statement. Id. at ¶¶ 41-44, 47. Plaintiffs assert they had no opportunity in advance to prevent their mandatory dues from being used to publish the April 2018 Bar Bulletin and if asked they would have declined to pay for publication of the statement. Id. at ¶ 45, 48. Plaintiffs Crowe and Peterson contacted the Bar's chief executive and objected to the use of their fees for that publication and received refunds in the amount of $1.15 each. Id. at ¶¶ 49-51. Plaintiffs assert other Bar members similarly received refunds but the Bar has not informed plaintiffs how it calculated the amounts of these partial refunds. Id. at ¶¶ 52-53.

Plaintiffs also allege the mandatory nature of the Oregon State Bar violates their freedom of association and asserts mandatory membership is not necessary to ensure quality legal services or to regulate attorneys. Id. at ¶ 7. Plaintiffs also allege the Bar's mandatory fees impinge on their right to free speech because the Bar fails to provide:

> (a) notice to members, including an adequate explanation of the basis for the dues and calculations of all non-chargeable activities, verified by an independent auditor; (b) a reasonably prompt decision by an impartial decision maker if a member objects to the way his or her mandatory dues are being spent; and (c) an escrow for the amounts reasonably in dispute while such objections are pending.

Id. at ¶ 62, 64. Plaintiffs further allege that refunding fees after an objection is made is insufficient. Id. at ¶ 65.

Finally, plaintiffs allege violation of their First and Fourteenth Amendment rights to free speech because the Bar has not implemented an "opt-in" system for members to pay for non-germane speech. Id. at ¶¶ 73-78. In addition, plaintiffs allege violation of their First and Fourteenth Amendment rights to associate due to compelled membership in the Bar. Id. at ¶¶ 80-88.

<u>DISCUSSION</u>

Plaintiffs Gruber and Runnels filed their complaint in the 18-1591-JR case on August 29, 2018.  Defendants moved to dismiss on October 22, 2018.  Plaintiffs responded to the motion and filed their own motion for summary judgment on November 5, 2018.  Before the parties completed briefing on the motions, on December 13, 2018, plaintiffs Crowe, Peterson, and the Oregon Civil Liberties Attorneys filed their complaint in the 18-2139-JR case.  Plaintiffs Gruber and Runnels then filed an amended complaint in the 18-1591-JR case and on January 9, 2018, defendants moved to dismiss in both actions.  Accordingly, defendants first motion to dismiss (doc. 14) in 18-1591-JR case should be denied as moot.[1]  The motions to dismiss in both cases involve the same issues and resolution of one motion necessarily resolves the other.

A.   <u>The Oregon State Bar</u>

In 1935, the Oregon Legislature enacted the State Bar Act, Or. Rev. Stat. §§ 9.005-9.757. The Bar is a public corporation and an instrumentality of the Judicial Department of the State of Oregon. Or. Rev. Stat. §9.010(2).  To practice law in the State of Oregon, a lawyer must join the Bar and pay an annual membership fee.  Or. Rev. Stat. §§ 9.160(1); 9.191; 9.200.  The State of Oregon is not responsible for the debts of the Bar and the financial needs of the Bar are met through the collection of membership fees.  Or. Rev. Stat. §§ 9.010(6); 9.191(3).

The Bar's Board of Governors is required to advance the science of jurisprudence and the

---

[1]Plaintiffs in the 18-1591-JR case did not respond to the second motion to dismiss. However, their First Amended Complaint only adds two defendants: the president and the chief executive officer of the Bar, but otherwise remains the same.  The second motion to dismiss is made on the same grounds as the first.  While the motion is technically unopposed, because the analysis is the same with respect to the motion to dismiss in the related 18-2139-JR case, the court applies that analysis in both cases for purposes of judicial economy.

improvement of the administration of justice.  Or. Rev. Stat. § 9.080(1).[2]  To accomplish this mission,  the Bar administers exams for admission to practice, examines a member's character and fitness, formulates and enforces rules of conduct, and requires continuing education and training of its members.  Or. Rev. Stat. §§ 9.210; 9.490; 9.114.  In addition, the Bar provides the public with general legal information and seeks to increase pro bono legal services.  See, e.g., https://www.osbar.org/public/; https://www.osbar.org/lsp; https://www.osbar.org/probono/.

As part of its mission, the Bar publishes a monthly Bar Bulletin.  The Bar's communications within the Bulletin:

> should be germane to the law, lawyers, the practice of law, the courts and the judicial system, legal education and the Bar in its role as a mandatory membership organization. Communications, other than permitted advertisements, should advance public understanding of the law, legal ethics and the professionalism and collegiality of the bench and Bar.

Oregon State Bar Bylaws, Art. 11, Sec. 1 (http://www.osbar.org/_docs/rulesregs/bylaws.pdf) (Bylaws).  In addition:

> Bar legislative or policy activities must be reasonably related to any of the following subjects: Regulating and disciplining lawyers;  improving the functioning of the courts including issues of judicial independence, fairness, efficacy and efficiency; making legal services available to society; regulating lawyer trust accounts; the education, ethics, competence, integrity and regulation of the legal profession; providing law improvement assistance to elected and appointed government officials;

---

[2]In addition, the Bar's mission is "to serve justice by promoting respect for the rule of law, by improving the quality of legal services, and by increasing access to justice. https://www.osbar.org/_docs/resources/OSBMissionStatement.pdf.  The court takes  judicial notice of the Bar's bylaws, Mission Statement, and other official statements and documents for purposes of the motions to dismiss. See Rhodes v. Sutter Health, 2012 WL 662462, at *3 (E.D. Cal. Feb. 28, 2012) (The court took judicial notice of a foundations bylaws because judicial notice of facts not subject to reasonable dispute is appropriate where they are either generally known within the territorial jurisdiction of the trial court, or are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.).

issues involving the structure and organization of federal, state and local courts in or affecting Oregon; issues involving the rules of practice, procedure and evidence in federal, state or local courts in or affecting Oregon; or issues involving the duties and functions of judges and lawyers in federal, state and local courts in or affecting Oregon.

Id. at 12.1.

Defendants assert the complaints should be dismissed for the following reasons: the Bar is immune from suit under the Eleventh Amendment to the United States Constitution; integrated bars are constitutional and may use mandatory fees for political speech germane to regulating attorneys and improving legal services; affirmative consent is not necessary before a bar engages in speech germane to legal services; the individual defendants are entitled to qualified immunity from claims for damages; and the Oregon State Bar Board of Governors is not a legal entity capable of being sued.

B.    Eleventh Amendment Immunity

The Eleventh Amendment provides:

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

The Amendment affirms the fundamental principle of sovereign immunity which limits the grant of judicial authority in Article III of the Constitution. Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 98 (1984). A State's Eleventh Amendment protection from suit has been extended to suits brought by a State's own citizens, Hans v. Louisiana, 134 U.S. 1, 10 (1890), and suits invoking the federal question jurisdiction of Article III. Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 72-73 (1996).

A suit against a State agency is considered to be a suit against the State, and is also barred by the Eleventh Amendment. Shaw v. California Dept. of Alcoholic Beverage Control, 788 F.2d 600, 603 (9th Cir. 1986). In addition, "[w]hen suit is commenced against state officials, even if they are named and served as individuals, the State itself will have a continuing interest in the litigation whenever State policies or procedures are at stake." Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 269 (1997).

Defendants assert the Bar is an arm of the State and thus is immune from suit.

> To determine whether a governmental agency is an arm of the state, the following factors must be examined: whether a money judgment would be satisfied out of state funds, whether the entity performs central governmental functions, whether the entity may sue or be sued, whether the entity has the power to take property in its own name or only the name of the state, and the corporate status of the entity.... To determine these factors, the court looks to the way state law treats the entity.

Mitchell v. Los Angeles Cmty. Coll. Dist., 861 F.2d 198, 201 (9th Cir. 1988).

The judges of this court have repeatedly and consistently held that the Bar is immune from suit under the Eleventh Amendment. See, e.g., Hartfield v. Or. State Bar, 2016 WL 9225978, at *1 (D.Or. Jan. 15, 2016), report and recommendation adopted, 2016 WL 9226386 (D.Or. Feb. 16, 2016), aff'd, 671 F.App'x 456 (9th Cir. 2016); Coultas v. Payne, 2012 WL 6725845, at *3 (D.Or. Nov. 27, 2012), report and recommendation adopted, 2012 WL 6726247, at *1 (D Or. Dec. 27, 2012); Weidner v. Albertazzi, 2006 WL 2987704, at *1 (D.Or. Oct. 13, 2006); Erwin v. Oregon ex rel. Kitzhaber, 231 F.Supp.2d 1003, 1007 (D.Or. 2001), aff'd, 43 F.App'x 122 (9th Cir. 2002)); see also Eardley v. Garst, 232 F.3d 894 (9th Cir. 2000) (claims against Oregon State Bar appropriately dismissed under Eleventh Amendment immunity). An analysis of the Mitchell factors again demonstrates the Bar is immune from suit in this case.

1.    The Mitchell Factors

a.    State Funds at Risk

As noted above, the Bar is a public corporation and an instrumentality of the Judicial Department of the State of Oregon.  Or. Rev. Stat. §9.010(2).  However, under the first Mitchell factor, a money judgment against the Bar would not be satisfied out of State funds.  Or. Rev. Stat. § 9.010(6).  Nonetheless, this factor is not necessarily critical in determining whether immunity applies in the cases at bar.[3]  The "Eleventh Amendment does not exist solely to 'prevent federal court judgments that must be paid out of a State's treasury.' "  Seminole Tribe of Fla, 517 U.S. at 58.  As noted above, the Eleventh Amendment not only bars suits at law, but suits at equity as well and thus "the relief sought by a plaintiff suing a State is irrelevant to the question whether the suit is barred by the Eleventh Amendment." Id.  Here, plaintiffs primarily seek injunctive relief.  Despite the fact the Bar alone is responsible for any money damages it may incur, the Bar performs essential governmental functions including the collection of fees to perform those functions.  Any money

---

[3]Despite the Ninth Circuit has referring to this factor as "most important," cases so finding primarily involve claims for money damages whereas the cases at bar primarily involve requests for equitable relief. See e.g., Durning v. Citibank, N.A., 950 F.2d 1419, 1426 (9th Cir. 1991); see also Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cty., 343 F.3d 1036, 1039 (9th Cir. 2003) (seeking compensatory and punitive relief); Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30, 48-49 (1994) (in action seeking recovery under Federal Employers' Liability Act, recognizing majority of circuit courts find the vulnerability of the State's purse as the most salient factor in Eleventh Amendment determinations).  The Seventh Circuit in a suit involving the Wisconsin State Bar stated, "even without any impact on the state's treasury, the district court must consider whether the Bar occupies the position of a public agency or official, necessarily forbidding any suit in federal court."  Crosetto v. State Bar of Wisconsin, 12 F.3d 1396, 1402 (7th Cir. 1993).  The Seventh Circuit later determined that the effect on the state treasury was the least important factor. Thiel v. State Bar of Wisconsin, 94 F.3d 399, 401 (7th Cir. 1996), overruled on other grounds by Kingstad v. State Bar of Wis., 622 F.3d 708 (7th Cir. 2010).

judgment would come from the Bar's collection of fees that is made possible because the State authorized the Bar to collect those fees.[4]  Accordingly, the money judgment sought by the plaintiffs, which is, the return of fees already paid, is not a dispositive element militating against a finding of immunity under the Mitchell factors.

      b.    Central Government Functions

The Oregon Legislature, through the State Bar Act, has delegated traditional functions of the judiciary to the Bar.  See, e.g., Ramstead v. Morgan, 219 Or. 383, 399, 347 P.2d 594, 601 (1959) (noting the delegation of traditional function of the judiciary in disciplining the members of the bar serving under it through the former Or. Rev. Stat. § 9.550).  As noted above, the State Bar Act broadly provides for the regulation of the practice of law in the State of Oregon.

The Bar regulates admission to the practice of law as well as the conduct of practicing attorneys in Oregon. See, e.g. Or.  Rev. Stat. §§ 9.080; 9.114; 9.210; 9.490. The Oregon Supreme Court oversees the Bar's regulatory activities, retaining original jurisdiction to review decisions concerning admissions, reinstatement, and attorney discipline. Or. Rev. Stat. § 9.536. The Supreme Court appoints the Bar's presiding disciplinary adjudicator, as well as members of the Bar's Disciplinary Board, State Professional Responsibility Board, Unlawful Practice of Law Committee,

---

    [4]If the Bar were unable to collect mandatory fees, its ability to regulate attorneys would be impacted.  As discussed in the next section, the Oregon Supreme Court would be left to carry out the regulatory function which would certainly impact the State's funding.  Thus, as a practical matter, plaintiffs' success in these actions will impact the State treasury.  See Alaska Cargo Transp., Inc. v. Alaska R.R. Corp., 5 F.3d 378, 381, 382 (9th Cir. 1993) (even though sued entity and not the State is liable for a judgment against it, the entity's finances are "in substantial respects ... dependent upon and controlled by the will of the governor and the legislature," and the State has a "strong interest in keeping [the entity operational] and fiscally sound.").

and the Board of Bar Examiners. See Or. Rev. Stat. §§ 9.210, 9.532; B.R. 1.1, 2.3, 2.4, 12.1 (https://www.osbar.org/_docs/rulesregs/rulesofprocedure.pdf); Bylaws §§ 18.100, 28.1 (http://www.osbar.org/_docs/rulesregs/bylaws.pdf). The Supreme Court approves any changes to the Bylaws that apply to admission to practice law in Oregon. See Or. Rev. Stat. § 9.542; Bylaws § 28.6. The Supreme Court also reviews all rules of procedure relating to the admission to practice law, discipline, resignation, and reinstatement of Bar members, and reviews the eligibility of candidates for the Board of Governors. Or. Rev. Stat. §§ 9.005(7); 9.042. The Chief Justice reviews annual statements of the Bar's financial position. Or. Rev. Stat. § 9.100. The Supreme Court also approves the Bar's budget for admissions, discipline, and continuing legal education programs in conjunction with the budgets of other Bar activities. Bylaws § 7.202.

The statutory structure of the State Bar Act and various implementing regulations demonstrate that the function of the Bar is to assume responsibilities otherwise within the domain of the Oregon Supreme Court. That statute further demonstrates that the Bar serves quintessential government functions.[5] See, e.g., O'Connor v. State of Nev., 686 F.2d 749, 750 (9th Cir. 1982) (Nevada State bar is the investigative arm of the Supreme Court of Nevada, charged with investigating and disciplining the legal profession of the state, and as such an agency, it too is

---

[5]Plaintiffs assert the "advisory nature of the Bar's relationship with the State Supreme Court undercuts a finding that the Bar performs central government functions" citing Keller v. State Bar of California, 496 U.S. 1, 11 (1990) (noting the functions of the California State Bar are actually reserved by California law to the State Supreme Court). The fact that decisions of the Bar are reviewed by the Oregon Supreme Court does not make those functions any less governmental in form. State administrative agencies' decisions are often subject to review without stripping the agency of their governmental duties. Moreover, such argument neglects to consider the State Legislature's choice to relieve the Supreme Court of these functions which may otherwise impinge on its ability to perform its other duties.

Page 14 - FINDINGS & RECOMMENDATION

immune from suit in federal court under the Eleventh Amendment).

     c.     Sue or Be Sued

The third Mitchell factor, whether the purported arm of the state may sue or be sued, militates somewhat against immunity. The Bar may sue or be sued. Or. Rev. Stat. § 9.010(5). However, the State Bar Act limits the ability to sue the Bar in certain respects. See Or. Rev. Stat. § 9.537 (providing absolute immunity to the Bar, Bar officers, and other Bar entities from civil liability in the performance of their duties relative to proposed or pending admission, professional licensing requirements, reinstatement, or disciplinary proceedings); Or. Rev. Stat. § 9.657 (providing immunity from civil liability for the performance of duties relative to proposed or pending client security fund claims). Thus, this factor does not argue against immunity from suit in federal court.

     d.     Power to Take Property in its Own Name

Pursuant to the fourth Mitchell factor, the court considers whether the Bar has the power to take property in its own name or in the name of the State. The Bar "may, in its own name, for the purpose of carrying into effect and promoting its objectives, enter into contracts and lease, acquire, hold, own, encumber, insure, sell, replace, deal in and with and dispose of real and personal property." Or. Rev. Stat. § 9.010. As such, this factor somewhat weighs against immunity. See Beentjes v. Placer Cty. Air Pollution Control Dist., 397 F.3d 775, 784 (9th Cir. 2005) (California law authorizes County Pollution Control District to "take by grant, purchase, gift, devise, or lease, to hold, use, and enjoy, and to lease or dispose of any real or personal property within or without the district necessary to the full exercise of its powers" weighed in favor finding district not an arm of the state). Nonetheless, the Bar's power to take property in its own name is in furtherance of its

objectives which are classified as governmental functions to aid the Supreme Court in regulating attorneys.  See Belanger v. Madera Unified Sch. Dist., 963 F.2d 248, 254 (9th Cir. 1992) (because beneficial ownership of public schools' property held in a district's own name enures to the State, this factor is entitled to little weight in the overall balance).  Moreover, the Bar's ability to hold property in its own name is limited in some respects.  For instance, while the Bar may take possession of abandoned client funds held in trust accounts, those funds belong to the State.  Or. Rev. Stat. §§ 98.386(2); 98.304.  Accordingly, this factor also fails to demonstrate lack of immunity.

    e.      Corporate Status

As to the fifth Mitchell factor, "the Oregon State Bar is a public corporation and an instrumentality of the Judicial Department of the government of the State of Oregon." Or. Rev. Stat. § 9.010.  This again demonstrates the central governmental role the Bar plays in concert with the Oregon Supreme Court.  Indeed, the Oregon Supreme Court has determined that this language establishes the Bar is itself a State agency.  State ex rel. Frohnmayer v. Oregon State Bar, 307 Or. 304, 309, 767 P.2d 893, 895 (1989).

Despite the independent financial status vested in the Bar through the State Bar Act, the legislature intended it to perform central government functions in concert with the Oregon Supreme Court and as such it is an arm of the state entitled to Eleventh Amendment Immunity.

However, the individual defendants, to the extent plaintiffs seek prospective injunctive relief, do not enjoy similar immunity.  See Coeur d'Alene Tribe of Idaho, 521 U.S. at 276-77 ("where prospective relief is sought against individual state officers in a federal forum based on a federal right, the Eleventh Amendment, in most cases, is not a bar.").  Nonetheless, as the law currently

stands with respect to integrated bars, compulsory fees and mandatory membership do not violate

the First and Fourteenth Amendments.  This is true even if the Bar engages in political speech so

long as the speech is germane to regulating the legal profession and improving the quality of legal

services.  In addition, to the extent the Bar has proper procedural safeguards in place to ensure

members are not required to fund non-germane speech, the First Amendment is not violated.

C.    Compulsory Bar Membership and Mandatory Fees

1.    Integrated Bar Specific Case Law

In 1961, a plurality of the Supreme Court determined:

> that the Supreme Court of Wisconsin, in order to further the State's legitimate
> interests in raising the quality of professional services, may constitutionally require
> that the costs of improving the profession in this fashion should be shared by the
> subjects and beneficiaries of the regulatory program, the lawyers, even though the
> organization created to attain the objective also engages in some legislative activity.
> Given the character of the integrated bar shown on this record, in the light of the
> limitation of the membership requirement to the compulsory payment of reasonable
> annual dues, we are unable to find any impingement upon protected rights of
> association.

Lathrop v. Donohue, 367 U.S. 820, 843 (1961).  However, the Court provided no opinion  as to the

correctness of the Wisconsin Supreme Court's conclusion  that the appellant may be constitutionally

compelled to contribute financial support to political activities which he opposes.  Id. at 847-48.

In 1990, the Supreme Court affirmed the requirement that lawyers admitted to practice in a

State may be required to join and pay dues to the State Bar.  Keller v. State Bar of California, 496

U.S. 1, 4 (1990). However, the specific issue before Keller was the scope of permissible

dues-financed activities in which the State Bar may engage.  The Court noted that in Abood v.

Detroit Board of Education, 431 U.S. 209, 235-36 (1977), a public union could not use a dissenting

union member's dues for ideological activities not "germane" to the purpose for which compelled

association was justified: collective bargaining.  Keller, 496 U.S. at 9, 13.  Accordingly, Keller

determined that a State Bar

> may therefore constitutionally fund activities germane to those goals out of the
> mandatory dues of all members. It may not, however, in such manner fund activities
> of an ideological nature which fall outside of those areas of activity.

Id. at 14.

In 1994, the Ninth Circuit recognized that Lathrop and Keller upheld the constitutionality of

integrated bars and that an integrated bar may constitutionally fund activities germane to regulating

the legal profession and improving the quality of legal services.  O'Connor v. State of Nev., 27 F.3d

357, 361 (9th Cir. 1994).

In 2014, the Supreme Court determined non-union home health care workers (who were not

full-fledged public employees) represented by a public union in collective bargaining could not be

compelled to pay dues unless the fee provision passes exacting First Amendment scrutiny.  Harris

v. Quinn, 573 U.S. 616, 648 (2014).  The Court then addressed whether:

> a refusal to extend Abood to cover the situation presented in this case will call into
> question our decisions in Keller v. State Bar of Cal., 496 U.S. 1, ... (1990) ....   [It
> does not].
>
> In Keller, we considered the constitutionality of a rule applicable to all members of
> an "integrated" bar, i.e., "an association of attorneys in which membership and dues
> are required as a condition of practicing law." 496 U.S., at 5....  We held that
> members of this bar could not be required to pay the portion of bar dues used for
> political or ideological purposes but that they could be required to pay the portion of
> the dues used for activities connected with proposing ethical codes and disciplining
> bar members. Id., at 14....
>
> This decision fits comfortably within the framework applied in the present case.
> Licensed attorneys are subject to detailed ethics rules, and the bar rule requiring the

payment of dues was part of this regulatory scheme. The portion of the rule that we upheld served the "State's interest in regulating the legal profession and improving the quality of legal services." Ibid.  States also have a strong interest in allocating to the members of the bar, rather than the general public, the expense of ensuring that attorneys adhere to ethical practices. Thus, our decision in this case is wholly consistent with our holding in Keller.

Harris at 655–56.

To date, neither the Ninth Circuit nor the Supreme Court has recognized that Lathrop or Keller have been abrogated and in fact, the Ninth Circuit has affirmed the continuing application of these cases as recently as March 13, 2018.  See Caruso v. Washington State Bar Ass'n 1933, 716 F. App'x 650, 651 (9th Cir. 2018) (district court properly dismissed the action citing Keller and Lathrop).  Nonetheless, plaintiffs assert the Supreme Court's recent decision in Janus v. Am. Fed'n of State, Cty., & Mun. Employees, Council 31, 138 S. Ct. 2448 (2018) now controls the analysis of First Amendment issues as applied to integrated bars.

2.    The Janus Decision

On June 27, 2018, the Court issued its decision in Janus overruling Abood, 431 U.S. 209. Specifically, the Court held:

Neither an agency fee nor any other payment to the union may be deducted from a nonmember's wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay. By agreeing to pay, nonmembers are waiving their First Amendment rights, and such a waiver cannot be presumed.... Rather, to be effective, the waiver must be freely given and shown by "clear and compelling" evidence.... Unless employees clearly and affirmatively consent before any money is taken from them, this standard cannot be met.

Id. at 2486.  The Court found the State's interest in "labor peace," while compelling, could be achieved through less restrictive means.  Id. at 2465-66.

Accordingly, plaintiffs assert not only does mandatory bar membership and compulsory fees

fail the exacting scrutiny standard described in Janus,[6] but because the Bar does not obtain members' affirmative consent before using their fees for political or ideological speech, the compulsory nature of the Bar's membership and fees further violates their First Amendment rights. However, because Keller has not been abrogated, this court is bound to follow its dictates as it is directly applicable to the cases at bar.

The Supreme Court has determined that exacting scrutiny is wholly consistent with the holding in Keller. Harris at 655–56. With respect to affirmative consent before using compulsory Bar dues for political speech, the Supreme Court has made no such proclamation and therefore this court is prohibited from assuming that Janus impliedly overruled Keller:

> We do not acknowledge, and we do not hold, that other courts should conclude our more recent cases have, by implication, overruled an earlier precedent. We reaffirm that "[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."

Agostini v. Felton, 521 U.S. 203, 237, 117 S. Ct. 1997, 2017, 138 L. Ed. 2d 391 (1997).

> The district court properly dismissed Eugster's claims relating to his compulsory membership in the WSBA because an attorney's mandatory membership with a state bar association is constitutional. See Keller v. State Bar of Cal., 496 U.S. 1, 13, 110 S.Ct. 2228, 110 L.Ed.2d 1 (1990) ("[T]he compelled association and integrated bar are justified by the State's interest in regulating the legal profession and improving the quality of legal services."); Lathrop v. Donohue, 367 U.S. 820, 843, 81 S.Ct. 1826, 6 L.Ed.2d 1191 (1961) (Brennan, J., plurality opinion) (state bar association may constitutionally require compulsory membership and payment of dues without impinging on protected rights of association). Contrary to Eugster's contentions, this court cannot overrule binding authority because "[a] decision of the Supreme Court will control that corner of the law unless and until the Supreme Court itself overrules

---

[6]Under exacting scrutiny, a compelled subsidy must "serve a compelling state interest that cannot be achieved through means significantly less restrictive of associational freedoms. Janus, 138 S.Ct. at 2465.

or modifies it." Hart v. Massanari, 266 F.3d 1155, 1171 (9th Cir. 2001).

Eugster v. Washington State Bar Ass'n, 684 F. App'x 618, 619 (9th Cir.), cert. denied, 137 S. Ct. 2315 (2017).

Accordingly, this court should decline to apply Janus and must apply Keller to the cases at bar.[7]  Applying Keller demonstrates that plaintiffs' claims fail as a matter of law and should be dismissed.

### 3.      Keller Application

As noted above, Keller permits the use of compulsory membership dues to fund speech germane to regulating the legal profession and improving the quality of legal services.  Arguably, the statement attributed to the Bar in the April 2018 Bar Bulletin is germane to that purpose. Plaintiffs assert the statement is non-germane political speech that condemns the proliferation of speech that incites violence and advocates taking action to stop such speech.  But to the extent such an interpretation is reasonable, it was made within the specific context of promotion of access to justice, the rule of law, and a healthy and functional judicial system that equitably serves everyone ("the [Bar] remains committed to equity and justice for all, and to vigorously promoting the law as the foundation of a just democracy").   This is germane to improving the quality of legal services. See Gardner v. State Bar of Nevada, 284 F.3d 1040, 1043 (9th Cir. 2002) (statements "to advance

---

[7]The fact that the Supreme Court recently remanded to the Eighth Circuit a case involving mandatory bar membership for further consideration in light of Janus does not alter the requirement that this court follow direct Supreme Court precedent.  See Fleck v. Wetch, 139 S. Ct. 590 (2018) (remanded to the United States Court of Appeals for the Eighth Circuit for further consideration in light of Janus,138 S.Ct. 2448).  The remand does not indicate the Supreme Court will ultimately overrule Keller.

understanding of the law, the system of justice, and the role of lawyers, as opposed to nonlawyers, to make the law work for everyone" are germane to improving of the legal profession).

The Specialty Bars' Statement appearing along side the Bar's statement in the April 2018 Bar publication is not a statement by the Bar, but instead a statement authored by seven affinity bars announcing their support of the Bar's statement, among other statements. Although the Specialty Bars' Statement included rhetoric critical of the President, the Bar Bulletin routinely publishes statements from a variety of authors with differing political viewpoints and creates a forum for the exchange of ideas pertaining to the practice of law. This service also is germane to improving the quality of legal services. However, even assuming the Specialty Bars' Statement includes political speech that is not germane to a permissible topic, and it is a statement made on behalf of the Bar and consequently compelled speech of its members, it still would not violate the First Amendment because the Bar has adequate safeguards in place to protect members' use of dues in this manner.

As noted above, communications within the Bulletin:

> should be germane to the law, lawyers, the practice of law, the courts and the judicial system, legal education and the Bar in its role as a mandatory membership organization. Communications, other than permitted advertisements, should advance public understanding of the law, legal ethics and the professionalism and collegiality of the bench and Bar.

Bylaws, 11.1 (http://www.osbar.org/_docs/rulesregs/bylaws.pdf).[8]

To the extent such communications fail to adhere to this policy, the Bylaws provide a framework for addressing those communications:

---

[8]Plaintiffs also challenge the Bar's general legislative policy. However, the Bylaws also provide that the Bar's legislative or policy activities must be reasonably related to topics related to the legal profession. See Bylaws 12.1. Accordingly, this claim fails as a matter of law.

Section 12.6 Objections to Use of Bar Dues

Subsection 12.600 Submission

A member of the Bar who objects to the use of any portion of the member's bar dues for activities he or she considers promotes or opposes political or ideological causes may request the Board to review the member's concerns to determine if the Board agrees with the member's objections. Member objections must be in writing and filed with the Chief Executive Officer of the Bar. The Board will review each written objection received by the Chief Executive Officer at its next scheduled board meeting following receipt of the objection. The Board will respond through the Chief Executive Officer in writing to each objection. The Board's response will include an explanation of the Board's reasoning in agreeing or disagreeing with each objection.

Subsection 12.601 Refund

If the Board agrees with the member's objection, it will immediately refund the portion of the member's dues that are attributable to the activity, with interest paid on that sum of money from the date that the member's fees were received to the date of the Bar's refund. The statutory rate of interest will be used. If the Board disagrees with the member's objection, it will immediately offer the member the opportunity to submit the matter to binding arbitration between the Bar and the objecting member. The Chief Executive Officer and the member must sign an arbitration agreement approved as to form by the Board.

Subsection 12.602 Arbitration

If an objecting member agrees to binding arbitration, the matter will be submitted to the Oregon Senior Judges Association ("OSJA") for the designation of three active-status retired judges who have previously indicated a willingness to serve as volunteer arbitrators in these matters. The Bar and the objecting member will have one peremptory challenge to the list of arbitrators. The Bar and the objecting member must notify one another of a peremptory challenge within seven days after receiving the list of proposed arbitrators. If there are no challenges or only one challenge, the OSJA will designate the arbitrator. The arbitrator will promptly arrange for an informal hearing on the objection, which may be held at the Oregon State Bar Center or at another location in Oregon that is acceptable to the parties and the arbitrator. The hearing will be limited to the presentation of written information and oral argument by the Bar and the objecting member. The arbitrator will not be bound by rules of evidence. The presentation of witnesses will not be a part of the hearing process, although the arbitrator may ask the state bar representative and the objecting member and his or her lawyer, if any, questions. The hearing may be reported, but the

expense of reporting must be borne by the party requesting it. The Bar and the objecting member may submit written material and a legal memorandum to the arbitrator no later than seven days before the hearing date. The arbitrator may request additional written material or memoranda from the parties. The arbitrator will promptly decide the matter, applying the standard set forth in Keller v. State Bar of California, 496 U.S. 1, 110 S. Ct. 2228, 110 L. Ed. 2d 1 (1990), to the expenditures to which the member objected. The scope of the arbitrator's review must solely be to determine whether the matters at issue are acceptable activities for which compulsory fees may be used under applicable constitutional law. In making his or her decision, the arbitrator must apply the substantive law of Oregon and of the United States Federal Courts. The arbitrator must file a written decision with the Chief Executive Officer within 14 days after the hearing. The arbitrator's decision is final and binding on the parties. If the arbitrator agrees with the member's objection, the Bar will immediately refund the portion of the member's dues that are reasonably attributable to the activity, with interest at the statutory rate paid on the amount from the date that the member's fees were received to the date of the Bar's refund. If the arbitrator agrees with the Bar, the member's objection is denied and the file in the matter closed. Similar or related objections, by agreement of the parties, may be consolidated for hearing before one arbitrator.

Oregon State Bar Bylaws, Art. 12, Sec. 6 (http://www.osbar.org/_docs/rulesregs/bylaws.pdf).

To comply with Keller's safeguard requirements for the collection of fees, the Bar must include an adequate explanation of the basis for the fee, provide a reasonably prompt opportunity to challenge the amount of the fee before an impartial decisionmaker, and provide an escrow account for the amounts reasonably in dispute while such challenges are pending. Keller 496 U.S. at 16 (citing Teachers v. Hudson, 475 U.S. 292 (1986)). Because the Bar specifically mandates that all communications must be germane to the law, it has instituted the above procedure only when a member believes the Bar has violated that mandate. As Keller noted,

We believe an integrated bar could certainly meet its Abood obligation by adopting the sort of procedures described in Hudson. Questions whether one or more alternative procedures would likewise satisfy that obligation are better left for consideration upon a more fully developed record.

Id. at 17.

The Bar's Bylaws procedure provides adequate safeguards as contemplated by Keller. The basis for the fee does not present itself until a Bar member objects and if the Bar agrees, it immediately refunds the fee attributable to the activity including any interest earned on that fee. Such procedure satisfies the escrow requirement of the safeguards and the opportunity to promptly challenge the fee.  If the Bar member disagrees with the decision he or she may then seek arbitration where, if the Bar has not already explained its decision, the member will receive an explanation of the fee decision and have the opportunity to resolve the issue before an impartial decisionmaker.

Nothing in Hudson's procedures mandate affirmative consent prior to collecting the fee.  This is especially true where the Bar's policy already mandates that all communications must be germane to the legal profession.  Moreover, the Bar provides all members with an annual accounting of both projected and actual expenses, allowing a member an opportunity to object if they believe an upcoming expense fails to comply with the Bylaws regarding germane communications.  See Or. Rev. Stat. § 9.100 (requiring financial statement submission to the Chief Justice); Bylaws § 7.2 (Board of Governors' review of proposed budget during public meetings).

Certain plaintiffs challenge the lack of explanation concerning their refunds upon objecting to the statements in the April 2018 Bar Bulletin.  However, plaintiffs did not avail themselves of the very procedures that would have provided that explanation and thus they cannot now allege a set of facts that would demonstrate the Bar, in its application of its Bylaws, violated their constitutional rights to procedural safeguards concerning the use of their fees for compelled speech.

Because the Bar has adequate procedural safeguards in place to protect against compelled speech and because mandatory Bar membership and compulsory fees do not otherwise violate the

First Amendment, plaintiffs' claims necessarily fail as a matter of law based on the face of the pleadings and judicially noticed facts. Accordingly, all claims should be dismissed.

E.    Qualified Immunity

Plaintiffs concede the individual defendants are immune from suit for damages and thus the motion to dismiss based on qualified immunity is moot.

F.    Board of Governors

Plaintiffs also concede the claims against the Board of Governors should be dismissed.

G.    Motion for Partial Summary Judgment (18-1591, Doc. 18)

Plaintiffs' motion relies on Janus overruling Keller and as noted above, this court cannot make that determination. Accordingly, the motion for partial summary judgment should be denied.


CONCLUSION

A.    Gruber v. Oregon State Bar, 18-cv-1591-JR

Defendants' motion to dismiss (doc. 14) should be denied as moot. Defendants' motion to dismiss (doc. 41) should be granted. Plaintiffs' motion for partial summary judgment (doc. 18) should be denied. The case should be dismissed and a judgment should be entered.

B.    Crowe v. Oregon State Bar, 18-cv-2139-JR

Defendants' motion to dismiss (doc. 15) should be granted. The case should be dismissed and a judgment should be entered.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate

Procedure, should not be filed until entry of the district court's judgment or appealable order.  The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 1st day of April, 2019.

_____
/s/ Jolie A. Russo
JOLIE A. RUSSO
United States Magistrate Judge