IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DIANE L. GRUBER and MARK RUNNELS, | Case No. 3:18-cv-1591-JR |
| Plaintiffs, | FINDINGS & RECOMMENDATION |
| v. | |
| OREGON STATE BAR, a Public Corporation; VANESSA A. NORDYKE, President of the, Oregon State Bar; HELEN HIERSCHBIEL, Chief Executive Officer of the Oregon State Bar, | |
| Defendants, | |
| | Case No. 3:18-cv-2139-JR |
| DANIEL Z. CROWE; OREGON CIVIL LIBERTIES ATTORNEYS; and LAWRENCE K. PETERSON, | |
| Plaintiffs, | |
| OREGON STATE BAR, a Public Corporation; OREGON STATE BAR BOARD OF GOVERNORS; VANESSA NORDYKE, President of the Oregon State Bar Board of Governors; CHRISTINE CONSTANTINO, President-elect of the Oregon State Bar Board of Governors; HELEN HIERSCHBIEL, Chief Executive Officer of the Oregon State Bar; KEITH PALEVSKY, Director of Finance and Operations of the Oregon State Bar; AMBER HOLLISTER, General Counsel for the Oregon State Bar, | |
| Defendants. | |

_____

Page 1 – FINDINGS & RECOMMENDATION

RUSSO, Magistrate Judge:

Plaintiffs in both cases challenge the mandatory nature of the Oregon State Bar's (OSB) compulsory fee structure. In early 2019, defendants moved to dismiss these actions. On May 24, 2019, the Court granted defendants' motions and dismissed the cases finding the OSB entitled to Eleventh Amendment Immunity and that both the First Amendment free speech and freedom of association claims failed due to the Bar's procedural safeguards protecting against compelled speech that is not germane to the law. Findings and Recommendation (ECF 44) Order adopting (ECF 46).

On appeal, the Ninth Circuit affirmed dismissal of plaintiffs' free speech claim finding the OSB's refund process sufficient to minimize potential infringement on members' constitutional rights if the OSB engages in political activity that is not germane to the Bar's role in regulating the legal profession. Crowe v. Oregon State Bar, 989 F.3d 714, 727 (2021). However, the Appeals Court found plaintiffs' free association claims viable because past Supreme Court and Ninth Circuit precedent failed to resolve this issue when previously confronted with it.[1] Id. at 729. The Ninth Circuit remanded to this Court to address the appropriate standard for assessing plaintiffs' free association claim and whether previous instruction regarding germaneness and procedurally adequate safeguards are relevant. Plaintiffs Daniel Crowe, Lawrence Peterson, and the Oregon Civil Liberties Attorneys (Crowe plaintiffs) seek summary judgment in Case No. 3:18-cv-2139-JR and defendants seek summary judgment in both cases. For the reasons stated below, defendants' motions should be granted, and the Crowe plaintiffs' motion should be denied.

---

[1] The Ninth Circuit also determined that OSB is not an arm of the state entitled to Eleventh Amendment Immunity. Crowe, 989 F.3d at 733.

Page 2 – FINDINGS & RECOMMENDATION

BACKGROUND

Plaintiffs initiated these actions following publication of statements in the OSB April 2018 Bulletin entitled "White Nationalism and Normalization of Violence" and "Joint Statement of the Oregon Specialty Bar Associations Supporting the Oregon State Bar's Statement on White Nationalism and Normalization of Violence." See, e.g., Crowe, 989 F.3d at 722-23. Plaintiffs complained about the statements and the OSB refunded $1.15 to plaintiffs and other objectors in an effort to adhere to the standards of germane speech as set forth in Keller v. State Bar of California, 496 U.S. 1, 13 (1990) (a state bar may use mandatory dues to subsidize activities germane to the goals for regulating the legal profession and the quality of legal services without running afoul of members' rights to free speech). After the Court dismissed these actions on May 24, 2019, the Ninth Circuit remanded to address the questions noted above.

In Oregon, with few exceptions, active Bar membership is required to practice law. Or. Rev. Stat. § 9.160. A court shall enjoin any person from practicing law in violation of section 9.160 and may punish them with contempt. Or. Rev. Stat. § 9.166.

Generally, all Bar members must pay annual membership fees and a professional liability assessment. Or. Rev. Stat. § 9.191. Failure to pay the fee will result in suspension from practice. Or. Rev. Stat. § 9.200.

The Bar's Board of Governors is required to advance the science of jurisprudence and the improvement of the administration of justice. Or. Rev. Stat. § 9.080(1). To accomplish this mission, the Bar administers exams for admission to practice, examines a member's character and fitness, formulates and enforces rules of conduct, and requires continuing education and training of its members. Or. Rev. Stat. §§ 9.210; 9.490; 9.114. In addition, the Bar provides the public

with general legal information and seeks to increase pro bono legal services. See, e.g., https://www.osbar.org/public/; https://www.osbar.org/lsp; https://www.osbar.org/probono/.

As part of its mission, the Bar publishes a monthly Bar Bulletin. The Bar's communications within the Bulletin:

> should be germane to the law, lawyers, the practice of law, the courts and the judicial system, legal education, and the Bar in its role as a mandatory membership organization. Communications, other than permitted advertisements, should advance public understanding of the law, legal ethics and the professionalism and collegiality of the bench and Bar.

Oregon State Bar Bylaws, Art. 11, Sec. 1 (http://www.osbar.org/_docs/rulesregs/bylaws.pdf) (Bylaws). In addition:

> Bar legislative or policy activities must be reasonably related to any of the following subjects: Regulating and disciplining lawyers; improving the functioning of the courts including issues of judicial independence, fairness, efficacy and efficiency; making legal services available to society; regulating lawyer trust accounts; the education, ethics, competence, integrity and regulation of the legal profession; providing law improvement assistance to elected and appointed government officials; issues involving the structure and organization of federal, state and local courts in or affecting Oregon; issues involving the rules of practice, procedure and evidence in federal, state or local courts in or affecting Oregon; or issues involving the duties and functions of judges and lawyers in federal, state and local courts in or affecting Oregon.

Id. at 12.1.

To the extent such communications fail to adhere to this policy, the Bylaws provide a framework for addressing those communications:

> Section 12.6 Objections to Use of Bar Dues
>
> Subsection 12.600 Submission
>
> A member of the Bar who objects to the use of any portion of the member's bar dues for activities he or she considers promotes or opposes political or ideological causes may request the Board to review the member's concerns to determine if the Board agrees with the member's objections. Member objections must be in writing and filed with the Chief Executive Officer of the Bar. The Board will review each written objection received by the Chief Executive Officer at its next scheduled

board meeting following receipt of the objection. The Board will respond through the Chief Executive Officer in writing to each objection. The Board's response will include an explanation of the Board's reasoning in agreeing or disagreeing with each objection.

Subsection 12.601 Refund

If the Board agrees with the member's objection, it will immediately refund the portion of the member's dues that are attributable to the activity, with interest paid on that sum of money from the date that the member's fees were received to the date of the Bar's refund. The statutory rate of interest will be used. If the Board disagrees with the member's objection, it will immediately offer the member the opportunity to submit the matter to binding arbitration between the Bar and the objecting member. The Chief Executive Officer and the member must sign an arbitration agreement approved as to form by the Board.

Subsection 12.602 Arbitration

If an objecting member agrees to binding arbitration, the matter will be submitted to the Oregon Senior Judges Association ("OSJA") for the designation of three active-status retired judges who have previously indicated a willingness to serve as volunteer arbitrators in these matters. The Bar and the objecting member will have one peremptory challenge to the list of arbitrators. The Bar and the objecting member must notify one another of a peremptory challenge within seven days after receiving the list of proposed arbitrators. If there are no challenges or only one challenge, the OSJA will designate the arbitrator. The arbitrator will promptly arrange for an informal hearing on the objection, which may be held at the Oregon State Bar Center or at another location in Oregon that is acceptable to the parties and the arbitrator. The hearing will be limited to the presentation of written information and oral argument by the Bar and the objecting member. The arbitrator will not be bound by rules of evidence. The presentation of witnesses will not be a part of the hearing process, although the arbitrator may ask the state bar representative and the objecting member and his or her lawyer, if any, questions. The hearing may be reported, but the expense of reporting must be borne by the party requesting it. The Bar and the objecting member may submit written material and a legal memorandum to the arbitrator no later than seven days before the hearing date. The arbitrator may request additional written material or memoranda from the parties. The arbitrator will promptly decide the matter, applying the standard set forth in Keller v. State Bar of California, 496 U.S. 1, 110 S. Ct. 2228, 110 L. Ed. 2d 1 (1990), to the expenditures to which the member objected. The scope of the arbitrator's review must solely be to determine whether the matters at issue are acceptable activities for which compulsory fees may be used under applicable constitutional law. In making his or her decision, the arbitrator must apply the substantive law of Oregon and of the United States Federal Courts. The arbitrator must file a written decision with the Chief Executive Officer within 14 days after the hearing. The arbitrator's decision is final and binding on the parties.

> If the arbitrator agrees with the member's objection, the Bar will immediately refund the portion of the member's dues that are reasonably attributable to the activity, with interest at the statutory rate paid on the amount from the date that the member's fees were received to the date of the Bar's refund. If the arbitrator agrees with the Bar, the member's objection is denied and the file in the matter closed. Similar or related objections, by agreement of the parties, may be consolidated for hearing before one arbitrator.

Oregon State Bar Bylaws, Art. 12, Sec. 6 (http://www.osbar.org/_docs/rulesregs/bylaws.pdf).

> The Crowe plaintiffs seek summary judgment as follows:
>
> 1. Declaring that Defendants violate Plaintiffs' rights to freedom of speech and association under the First and Fourteenth Amendments to the United States Constitution by enforcing Oregon statutes that make membership in the Oregon State Bar a prerequisite to practicing law in Oregon and by imposing mandatory dues as a condition of membership;
>
> 2. Permanently enjoining Defendants and all persons in active concert or participation with them from enforcing ORS 9.160, which mandates membership in the Oregon State Bar, and ORS 9.191, which requires payment of membership fees to the Oregon State Bar; and
>
> 3. Award Plaintiffs Crowe and Peterson damages equal to the dues each paid to the Oregon State Bar from December 13, 2016, to the present, plus interest.

Motion for Summary Judgment (ECF 80 in Case No. 3:18-cv-2139-JR) at p. 1.[2]

Defendants seek summary judgment contending plaintiffs' request for injunctive and declaratory relief is moot, OSB did not engage in nongermane activity, and plaintiffs have not presented sufficient evidence of associational harm.

## DISCUSSION

Plaintiffs Diane Gruber and Mark Runnels (Gruber plaintiffs) sought summary judgment shortly after remand asserting that Oregon laws requiring them to be members of the OSB and pay dues, fees, and assessments violate their right to freedom of association protected by the First

---

[2] Plaintiffs Diane Gruber and Mark Runnels challenge the requirement that they must associate with an organization that they believe engages in political and ideological activities they do not agree with. Response (ECF 100 in Case No. 3:18-cv-1591-JR) at p. 1.

Amendment. ECF 65 (Case No. 3:18-1591). The Court determined that Schell v. Chief Just. & Justs. of Oklahoma Supreme Ct., 11 F.4th 1178 (10th Cir. 2021) provided the appropriate standard for assessing free association claims:

> In Schell, the Tenth Circuit analyzed in detail the standard of review to apply in analyzing First Amendment claims based on compulsory membership in an integrated bar. Id., at 1186-91. The Tenth Circuit reviewed the Supreme Court's holdings in Lathrop v. Donohue, 367 U.S. 820 (1961); Abood v. Detroit Board of Education, 431 U.S. 209 (1977); Keller v. State Bar of California, 496 U.S. 1, 110 (1990); and Janus. Id., at 1186-90. The court discussed how an integrated bar generally does not violate associational rights but that the issue "for a free speech or freedom of association violation" is to consider "the germaneness of the alleged activities to the valid goals and purposes of the OBA [Oklahoma Bar Association]." Id., at 1192. The Tenth Circuit concluded that Janus and its "exacting scrutiny" standard did not displace Keller and its germaneness standard, even for associational rights claims. Id., at 1191.

Opinion and Order (ECF 84 in Case No. 3:18-1591) at p. 7.

The remaining question is whether the plaintiffs have presented any issues of fact as to whether the OSB has engaged in activities that are not germane to the accepted purposes of the Bar, and, if so, whether freedom of association claims may be asserted based on that activity. The Supreme Court has indicated, with respect to integrated bars, that compelled membership in a Bar is permissible even if the bar is also engaged in some legislative activity. Lathrop, 367 U.S. at 843. In addition, the Lathrop Court indicated if the bulk of State Bar activities serve legitimate functions of a bar association, those activities do not impinge on protected rights of association. Id. Accordingly, it stands to reason that Keller's instructions regarding germaneness and procedurally adequate safeguards are relevant to plaintiffs' assertion of associational rights as well. See Schell 11 F.4th at 1195 ("the district court will need to apply the test from Keller to determine

whether the articles are germane to the accepted purposes of the state bar. See Keller, 496 U.S. at 14, 110 S. Ct. 2228").[3]

A. The Germane Inquiry

Plaintiffs continue to rely on Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31, 138 S. Ct. 2448 (2018) to argue that exact scrutiny applies and that a refund procedure for dues attributable to nongermane conduct can never resolve a freedom of association injury. As noted above, this Court has previously determined that Janus did not displace the germaneness standard and given that Lathrop remains applicable, a freedom of association claim will not lie where nongermane activity is minor compared to an integrated bar's legitimate activity. Because it is unclear what constitutes "in purport and in practice the bulk of State Bar activities," such that associational claims are not infringed, Lathrop, 367 U.S. at 843, the Court's later adoption of the procedural safeguards in the First Amendment expression context in Keller, provides a logical answer. Nonetheless, as discussed below, the purported nongermane activities noted by plaintiffs are, at worst, incidental to the OSB's legitimate function and does not run afoul of Lathrop or Keller.

In addition, to the extent plaintiffs continue to challenge the OSB's mandatory membership and fee structure, the Court has previously foreclosed that claim. See Gruber v. Oregon State Bar, 2022 WL 1538645, at *5 (D. Or. May 16, 2022) (simply being compelled to be a member of an integrated bar does not violate associational rights).[4]

---

[3] The Keller Court concluded a bar could satisfy the germaneness obligation "by adopting the sort of procedures described in Hudson." Id. at 17 (referencing Chicago Teachers Union v. Hudson, 475 U.S. 292, (1986)). At a minimum, Hudson's safeguards "include an adequate explanation of the basis for the [compulsory] fee, a reasonably prompt opportunity to challenge the amount of the fee before an impartial decisionmaker, and an escrow for the amounts reasonably in dispute while such challenges are pending." Hudson, 475 U.S. at 310.

[4] In addition, to the extent defendants continue to seek Eleventh Amendment Immunity, that issue has also been foreclosed by the Ninth Circuit. Crowe, 989 F.3d at 731.

As described in the fee context related to an expression claim, to comply with Keller's safeguard requirements, a state bar must include an adequate explanation of the basis for the fee, provide a reasonably prompt opportunity to challenge the fee amount before an impartial decisionmaker, and provide an escrow account for the amounts reasonably in dispute while such challenges are pending. Keller 496 U.S. at 16 (citing Teachers v. Hudson, 475 U.S. 292 (1986)). Because the Bar specifically mandates that all communications must be germane to the law, it has instituted the above procedure only when a member believes the Bar has violated that mandate. As Keller noted, an integrated bar could certainly meet its obligation by adopting the type of procedures described in Hudson. Id. at 17.

The question is whether the First Amendment tolerates mandatory membership itself—independent of compelled financial support—in an integrated bar that engages in nongermane political activities, Crowe v. Oregon State Bar, 989 F.3d 714, 729 (9th Cir. 2021).[5] The evidence of nongermane activity has now been developed and that activity is no broader than the activity in Lathrop. There a bar member challenged the requirement to be an enrolled dues paying member of the Wisconsin State Bar because:

> [I] do not like to be coerced to support an organization which is authorized and directed to engage in political and propaganda activities. * * * A major portion of the activities of the State Bar as prescribed by the Supreme Court of Wisconsin are of a political and propaganda nature.' His complaint alleges more specifically that the State Bar promotes 'law reform' and 'makes and opposes proposals for changes in * * * laws and constitutional provisions and argues to legislative bodies and their committees and to the lawyers and to the people with respect to the adoption of changes in * * * codes, laws and constitutional provisions.' He alleges further that in the course of this activity 'the State Bar of Wisconsin has used its employees, property and funds in active, unsolicited opposition to the adoption of legislation by the Legislature of the State of Wisconsin, which was favored by the plaintiff, all contrary to plaintiff's convictions and beliefs.'

---

[5] Thus, the refund procedure that satisfies the Abood requirements is less relevant. Nevertheless, the process still enables an OSB member to express his or her dissent with a particular OSB activity and thus permit the member to disassociate from purportedly forced association.

Lathrop, 367 U.S. at 822. The issues challenged in Lathrop mirror the issues challenged here – purported political propaganda by the Bar that plaintiffs contend they should not be compelled to associate with.

>Lathrop held:
>
>Both in purport and in practice the bulk of State Bar activities serve the function, or at least so Wisconsin might reasonably believe, of elevating the educational and ethical standards of the Bar to the end of improving the quality of the legal service available to the people of the State, without any reference to the political process. It cannot be denied that this is a legitimate end of state policy.[footnote omitted] We think that the Supreme Court of Wisconsin, in order to further the State's legitimate interests in raising the quality of professional services, may constitutionally require that the costs of improving the profession in this fashion should be shared by the subjects and beneficiaries of the regulatory program, the lawyers, even though the organization created to attain the objective also engages in some legislative activity. Given the character of the integrated bar shown on this record, in the light of the limitation of the membership requirement to the compulsory payment of reasonable annual dues, we are unable to find any impingement upon protected rights of association.

Id. at 843.[6]

Accordingly, the purported nongermane activities do not violate plaintiffs' right to freedom of association despite compelled membership - independent of compelled financial support.

B.      Mootness

Defendants contend the Crowe plaintiffs' request for injunctive and declaratory relief is moot. Defendants assert plaintiffs Crowe and Peterson have no present intent to practice law in Oregon and plaintiff Oregon Civil Liberties Attorneys (ORCLA) has not identified any members with a present intention to practice law in Oregon.

---

[6] It should be noted, however, that the Lathrop Court was only confronted with a question of compelled financial support of group activities, not with involuntary membership in any other aspect. Lathrop, 367 U.S. at 828. Nonetheless, the application for procedures to express a desire to dissociate with certain aspects of a state bar's activity that is not germane to its purpose provides sufficient protection of associational rights at least where the purported germane activity is incidental to a state bar's legitimate objectives.

Plaintiff Crowe transitioned to pro bono membership in the OSB in 2019 and is currently pursuing a seminary degree in Florida.  See Deposition of Daniel Crowe (ECF 80-3 in Case No. 3:18-cv-2139-JR) at p. 24.  Plaintiff Peterson resigned from the OSB in 2020 and currently lives in Arizona.  See Deposition of Lawrence Peterson (ECF 80-4 in Case No. 3:18-cv-2139-JR) at p. 9.

Active members of OSB include active pro bono members.  OSB Bylaws § 6.1(a) (ECF 80-2 in Case No. 3:18-cv-2139-JR at p. 16).  Accordingly, plaintiff Crowe may practice law in Oregon.  Or. Rev. Stat. § 9.160 ("a person may not practice law in this state or represent that the person is qualified to practice law in this state, unless the person is an active member of the Oregon State Bar.").  Active pro bono lawyers are subject to various OSB requirements including obtaining professional liability coverage and payment of membership fees. OSB Bylaws § 6.2(d-e) (ECF 80-2 in Case No. 3:18-cv-2139-JR at p. 17).  Because plaintiff Crowe is still subject to membership requirements in OSB and the specific requirement to pay fees which he seeks to enjoin, his claims are not moot.  Crowe's membership in ORCLA also negates any claim of mootness as to that organization.  See Hunt v. Washington State Apple Advert. Comm'n, 432 U.S. 333, 342 (1977) (an association may have standing solely as the representative of its members so long as any one of its members suffers immediate or threatened injury as a result of the challenged action).

Plaintiff Peterson, on the other hand, not only has resigned from the OSB, but has retired from the practice of law.  See Deposition of Lawrence Peterson (ECF 80-4 in Case No. 3:18-cv-2139-JR) at p. 6.  While plaintiff Peterson alleges, he would have maintained his membership if not for his frustration with the alleged political activity of the OSB, he still would have ceased practicing law.  Id. at p. 9.  A retired member must pay inactive fees to maintain membership. Plaintiff Peterson is not subject to any challenged provision of OSB membership as a result of his

Page 11 – FINDINGS & RECOMMENDATION

resignation. Accordingly, his claims are moot, and he lacks standing to challenge the OSB's mandatory membership. See Bayer v. Neiman Marcus Grp., Inc., 861 F.3d 853, 868 (9th Cir. 2017) (to avoid mootness with respect to a claim for declaratory relief on the ground that the relief sought will address an ongoing policy, the plaintiff must show the policy has adversely affected and continues to affect a present interest). As such, the Court should grant summary judgment in favor of defendants as to the claims asserted by plaintiff Peterson.

  C. Alleged Nongermane Activities

    1. Bar Bulletin Statements

As noted above, the primary assertion that the OSB engaged in nongermane activity relates to the April 2018 OSB Bulletin publication titled, "White Nationalism and Normalization of Violence." Plaintiffs assert the statements are not germane to the practice of law in Oregon. The statements read:

> **Statement on White Nationalism and Normalization of Violence**
>
> As the United States continues to grapple with a resurgence of white nationalism and the normalization of violence and racism, the Oregon State Bar remains steadfastly committed to the vision of a justice system that operates without discrimination and is fully accessible to all Oregonians. As we pursue that vision during times of upheaval, it is particularly important to understand current events through the lens of our complex and often troubled history. The legacy of that history was seen last year in the streets of Charlottesville, and in the attacks on Portland's MAX train. We unequivocally condemn these acts of violence.
>
> We equally condemn the proliferation of speech that incites such violence. Even as we celebrate the great beneficial power of our First Amendment, as lawyers we also know it is not limitless. A systemic failure to address speech that incites violence emboldens those who seek to do harm and continues to hold historically oppressed communities in fear and marginalization.
>
> As a unified bar, we are mindful of the breadth of perspectives encompassed in our membership. As such, our work will continue to focus specifically on those issues that are directly within our mission, including the promotion of access to justice, the rule of law, and a healthy and functional judicial system that equitably serves everyone. The current climate of violence, extremism and exclusion gravely

threatens all of the above. As lawyers, we administer the keys to the courtroom, and assist our clients in opening doors to justice. As stewards of the justice system, it is up to us to safeguard the rule of law and to ensure its fair and equitable administration. We simply cannot lay claim to a healthy justice system if whole segments of our society are fearful of the very laws and institutions that exist to protect them.

In today's troubling climate, the Oregon State Bar remains committed to equity and justice for all, and to vigorously promoting the law as the foundation of a just democracy. The courageous work done by specialty bars throughout the state is vital to our efforts and we continue to be both inspired and strengthened by those partnerships. We not only refuse to become accustomed to this climate, we are intent on standing in support and solidarity with those historically marginalized, underrepresented, and vulnerable communities who feel voiceless within the Oregon legal system.

[Signed by OSB President and Other OSB officials]

**Joint Statement of the Oregon Specialty Bar Associations Supporting the Oregon State Bar's Statement on White Nationalism and Normalization of Violence**

The Oregon Asian Pacific American Bar Association, the Oregon Women Lawyers, the Oregon Filipino American Lawyers Association, OGALLA-The LGBT Bar Association of Oregon, the Oregon Chapter of the National Bar Association, the Oregon Minority Lawyers Association, and the Oregon Hispanic Bar Association support the Oregon State Bar's Statement on White Nationalism and Normalization of Violence and its commitment to the vision of a justice system that operates without discrimination and is fully accessible to all Oregonians.

Through the recent events from the Portland MAX train attacks to Charlottesville, we have seen an emboldened white nationalist movement gain momentum in the United States and violence based on racism has become normalized. President Donald Trump, as the leader of our nation, has himself catered to this white nationalist movement, allowing it to make up the base of his support and providing it a false sense of legitimacy. He has allowed this dangerous movement of racism to gain momentum, and we believe this is allowing these extremist ideas to be held up as part of the mainstream, when they are not. For example, President Trump has espoused racist comments, referring to Haiti and African countries as "shithole countries" and claiming that the United States should have more immigrants from countries like Norway. He signed an executive order that halted all refugee admissions and barred people from seven Muslim-majority countries, called Puerto Ricans who criticized his administration's response to Hurricane Maria "politically motivated ingrates," said that the white supremacists marching in Charlottesville, North Carolina in August of 2017 were "very fine people," and called into question

> a federal judge, referring to the Indiana-born judge as "Mexican," when the race of his parents had nothing to do with the judge's decision. We are now seeing the white nationalist movement grow in our state and our country under this form of leadership.
>
> As attorneys who lead diverse bar associations throughout Oregon, we condemn the violence that has occurred as a result of white nationalism and white supremacy. Although we recognize the importance of the First Amendment of the United States Constitution and the protections it provides, we condemn speech that incites violence, such as the violence that occurred in Charlottesville. President Trump needs to unequivocally condemn racist and white nationalist groups. With his continued failure to do so, we must step in and speak up.
>
> As attorneys licensed to practice law in Oregon, we took an oath to "support the Constitution and the laws of the United States and of the State of Oregon." To that end, we have a duty as attorneys to speak up against injustice, violence, and when state and federal laws are violated in the name of white supremacy or white nationalism. We must use all our resources, including legal resources, to protect the rights and safety of everyone. We applaud the Oregon State Bar's commitment to equity and justice by taking a strong stand against white nationalism. Our bar associations pledge to work with the Oregon State Bar and to speak out against white nationalism and the normalization of racism and violence.
>
> [Signed by Various heads of Oregon Specialty Bar Associations]

Ex. 6 to Motion for Summary Judgment (ECF 80-6 in Case No. 3:18-cv-2139-JR).

Arguably, the statements fall within a compelling and legitimate OSB mission.

"The right to associate for expressive purposes is not ... absolute." Roberts v. U.S. Jaycees, 468 U.S. 609, 623 (1984). In its freedom-of-association cases, the Supreme Court has generally applied "exacting ... scrutiny," under which "mandatory associations are permissible only when they serve a 'compelling state interest that cannot be achieved through means significantly less restrictive of associational freedoms.'" Knox v. Serv. Emps. Intl Union, Loc. 1000, 567 U.S. 298, 310 (2012) (quoting Roberts, 468 U.S. at 623).

> compelling a lawyer to join a bar association engaged in non-germane activities burdens his or her First Amendment right to freedom of association. Such a bar association would invariably be engaged in expressive activities. Even bar associations that engage in only germane activities undertake some expressive activities; for example, proposing an ethical rule expresses a view that the rule is a

good one, and commenting on potential changes to the state's court system, as the bar in Lathrop did, expresses a view that such a reform is a good or bad idea.

McDonald v. Longley, 4 F.4th 229, 245 (5th Cir. 2021).

Although the McDonald Court determined that compelled membership of a bar association that engages in non-germane activity infringes on the freedom of association and fails exacting scrutiny, id. at 246, Lathrop suggests some level of nongermane activity does not run afoul of associational rights. Moreover, the McDonald Court also examined whether procedural safeguards would negate an infringement upon associational rights. Id. at pp. 252-54. The challenged statements relate to improving the quality of the legal profession and advancing a fair, inclusive, and accessible justice system. Where the second statement may run afoul of these legitimate activities is in its opinion that the former President of the United States "catered to this white nationalist movement." Nonetheless, this opinion was tangential to the legitimate messages promoted in the statements and does not run afoul of the expressive rights of any member regardless of their compelled membership. Cf. id. at 249 (various diversity initiatives through the state bar, though highly ideologically charged, are germane to the purposes identified in Keller). To the extent the inclusion of the opinion regarding the former President is nongermane, the OSB provides adequate safeguards to prevent associational harms by granting a process through which members can disassociate from the expression and indeed certain plaintiffs availed themselves of that process. Accordingly, the Court should find the statements in the April 2018 issue of the Bar Bulletin do not violate plaintiffs' right to freedom of association.

 2. Legislative Activity

The Crowe plaintiffs assert the OSB engages in nongermane conduct through lobbying for changes in Oregon's laws.

As noted above, the OSB Bylaws provide that legislative activity must be reasonably related to: regulating and disciplining lawyers; improving the functioning of the courts including issues of judicial independence, fairness, efficacy and efficiency; making legal services available to society; regulating lawyer trust accounts; the education, ethics, competence, integrity and regulation of the legal profession; providing law improvement assistance to elected and appointed government officials; issues involving the structure and organization of federal, state and local courts in or affecting Oregon; issues involving the rules of practice, procedure and evidence in federal, state or local courts in or affecting Oregon; or issues involving the duties and functions of judges and lawyers in federal, state and local courts in or affecting Oregon. Plaintiff Crowe asserts that none of this is germane to the valid goals and purposes of the OSB "[a]s the Bar is functioning right now." See Deposition of Daniel Crowe (ECF 80-3 in Case No. 3:18-cv-2139-JR) at pp. 27-28.

As to specific legislative activity, the Crowe plaintiffs assert the OSB's support of the following pieces of 2021 legislation were nongermane: SB 297 (inclusion of judicial marshals in definition of police officers for purposes of the Public Employees Retirement System); SB 513 (adding civics credit to the statutory coursework requirements for a student to graduate high school); SB 180 (require insurers to notify a claimant directly in certain cases when paying more than $5,000 to settle a third-party liability claim); SB 182 (terminate the authority of a spouse to act as an agent under certain estate planning documents upon annulment, separation, or dissolution of a marriage); SB 185 (allow a nonprofit's board of directors or members to act electronically—including by email—so long as doing so is not prohibited by the articles of incorporation); SB 181 (require courts to consider whether access to justice would be promoted when awarding attorney fees,

even when the attorney bringing the case did so pro bono); SB 183 (proposed a process to recognize tribal court judgments as "foreign judgments"); SB 768 (amend statutes related to the OSB, but in the process would exempt OSB and its committees from being required to record and make public its telephonic or video meetings, as is generally required of public bodies); SB 829 ( allow under certain circumstances a tenant with an unexpired lease to remain in possession of the property even after the property is sold, and to clarify the eviction procedures for individuals who purchase property that was sold to satisfy a judgment); SB 295 (define terms related to "fitness to proceed" in criminal trials and clarified when a criminal defendant may be referred to the Oregon State Hospital).

The Crowe plaintiffs also identify the following bills from the 2019 legislative session as nongermane: SB 358 (permit the Department of Revenue to disclose an attorney's taxpayer information for certain disciplinary actions); SB 359 (create a process for the ratification of certain defective actions of shareholders or corporations); HB 2459 (allow lienholders to ask for payoff amounts from other lienholders); SB 360 (modify Oregon's Nonprofit Corporations Act); SB 361 (direct trustees to consider additional factors when managing a trust, including "the settlor's desire to engage in sustainable or socially responsible investment strategies"). Finally, plaintiffs identify HB 4008 and HB 4010 from the 2018 legislative session, which included a provision to prohibit courts from considering race or ethnicity when calculating protected future earning potential in a civil action, as nongermane.

The OSB is charged with serving the public interest by:

(a) Regulating the legal profession and improving the quality of legal services;
(b) Supporting the judiciary and improving the administration of justice; and
(c) Advancing a fair, inclusive and accessible justice system.

Or. Rev. Stat. § 9.080.

The OSB develops legislative priority proposals before each legislative session that conforms with its mission and then submits those proposals to the Board of Governors for Keller review to assure that they are related to regulating the legal profession, improving the quality of legal services, supporting the judiciary, improving the administration of justice, or advancing a fair, inclusive and accessible justice system. See Declaration of Susan Grabe (ECF 88 in Case No. 3:18-cv-2139-JR) at ¶ 6. The OSB's Board of Governors meets every two weeks to continually evaluate the germaneness of any legislation for which it advocates. Id. at ¶ 8.

The seventeen instances of legislative advocacy identified by the Crowe plaintiffs falls within the OSB's mission.

SB 180, SB 182, SB 768 from the 2021 legislative session and SB 358 from the 2019 session relate to regulation of the profession or support the administration of justice. SB 181, SB 183, SB 185, SB 295, SB 297, SB 513, and SB 829 from 2021; SB 359, SB 360, SB 361, HB 2459 from 2019; and HB 4008 and HB 4010 from 2018 relate to improving the quality of legal services through removing technical problems or malpractice traps or improve access to justice in Oregon. Plaintiffs have not identified any legislative activity that is nongermane. Moreover, the process by which the OSB develops legislative priority proposals provides ample opportunity for members to utilize the procedural safeguards identified above to make any objections and seek appropriate relief. Accordingly, the Court should find the legislative activity noted above does not violate plaintiffs' right to freedom of association. Because plaintiffs fail to identify a violation of their associational rights, summary judgment should be granted in favor of defendants.

CONCLUSION

Defendants' motions for summary judgment (ECF 76 in Case No. 3:18-cv-2139-JR) and (ECF 95 in Case No. 3:18-cv-1591-JR) should be granted. Plaintiffs Daniel Crowe, Lawrence Peterson, and the Oregon Civil Liberties Attorneys' motion for summary judgment (ECF 80 in Case No. 3:18-cv-2139-JR) should be denied. These actions should be dismissed, and a judgment should enter.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 19th day of December, 2022.

                           /s/ Jolie A. Russo
                               Jolie A. Russo
                          United States Magistrate Judge