**MILITARY DISABILITY LAWYER, LLC**
Luke Miller (#175051)
1567 Edgewater St. NW
PMB 43
Salem, OR  97304
1-800-392-5682
luke@militarydisabilitylawyer.com

**Scharf-Norton Center for
Constitutional Litigation at the
GOLDWATER INSTITUTE**
Scott Day Freeman (Appearing *pro hac vice*)
Adam C. Shelton (Appearing *pro hac vice*)
500 E. Coronado Rd.
Phoenix, Arizona 85004
(602) 462-5000
litigation@goldwaterinstitute.org

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| DANIEL Z. CROWE; OREGON CIVIL LIBERTIES ATTORNEYS; and LAWRENCE K. PETERSON,<br><br>          Plaintiffs,<br><br>v.<br><br>STATE BAR OF OREGON, et al.<br><br>          Defendant, | Case No.  3:18-cv-02139-JR<br><br>**PLAINTIFFS' OBJECTIONS TO THE MAGISTRATE'S FINDINGS AND RECOMMENDATION** |

Plaintiffs respectfully object to the Findings and Recommendation (the "Recommendation") filed on December 19, 2022. (Doc. 94.) Primarily, the Recommendation assumes that the state legislature can establish the permissible scope of responsibilities for a mandatory bar association, irrespective of constitutional guarantees of freedom of speech and freedom of association.

Specifically, although Plaintiffs contend that *Keller v. State Bar of California*, 496 U.S. 1 (1990), and its "germaneness" analysis has been supplanted entirely by *Janus v. AFSCME*, 138 S. Ct. 2448 (2018), Plaintiffs acknowledge that this Court will be guided by it—not legislative enactments—when evaluating a compelled speech claim. But as the Ninth Circuit Court of Appeals acknowledged in this case, *Keller* did not foreclose the broad freedom of association claim that remains at issue in this case. *See Crowe v. Or. State Bar*, 989 F.3d 714, 727–29 (9th Cir. 2021). In remanding this case, the Ninth Circuit stated that "the district court will need to determine whether *Janus* supplies the appropriate standard for Plaintiffs' free association claim and, if so, whether [the bar] can satisfy its 'exacting scrutiny standard.'" *Id.* at 729. The Ninth Circuit also stated that the district court would "also likely need to determine whether *Keller*'s instructions with regards to germaneness and procedurally adequate safeguards are even relevant to the free association inquiry." *Id.* The foregoing analysis is largely missing from the Recommendation. Instead, the Recommendation sidesteps *Janus* and wrongly concludes that the conduct of the Oregon State Bar ("OSB") conformed to its statutory purpose and was thereby permissible.

Relying on the bar's "statutory purposes" in recommending that this Court enter summary judgment in favor of OSB and not Plaintiffs is incorrect. Instead, this Court should assess, as argued in Plaintiffs' Motion for Summary Judgment (Doc. 80), the "germaneness" of OSB's conduct in light of *Keller*, *Janus*, and *McDonald v. Longley*, 4 F.4th 229 (5th Cir. 2021). This Court should conclude that OSB engaged in nongermane conduct, thereby failing the exacting scrutiny analysis established in *Janus* and as applied by the Fifth Circuit in *McDonald*. Failing exacting scrutiny, the Court should grant Plaintiffs' Motion for Summary Judgment.

PLS.' OBJ. TO MAGISTRATE'S FINDINGS & RECOMMENDATION - 1

**LEGAL STANDARD**

This Court applies de novo review when a party objects to a magistrate's findings and recommendation. 28 U.S.C. § 636(b)(1). The Court may "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

Summary Judgment is appropriate here because there is no genuine issue of material fact in dispute.[1] Fed. R. Civ. P. 56(a). Plaintiffs have shown they are entitled to judgment as a matter of law because OSB engaged in conduct that fails the exacting scrutiny analysis required by *Janus*, and as applied by the Fifth Circuit Court of Appeal in the challenge to Texas's mandatory bar. *See McDonald*, 4 F.4th at 246 ("Compelled membership in a bar association that engages in non-germane activities … fails exacting scrutiny.") Accordingly, the Court should grant Plaintiffs' motion for summary judgement and deny Defendants' motion. *Id.*

**OBJECTIONS**

**I.    Plaintiffs Have Shown OSB Engaged in Nongermane Conduct.**

OSB has engaged in conduct unrelated to the regulation of lawyers *qua* lawyers and unrelated to the lawyer's role in improving the quality of legal services, which are the constitutional purposes identified in *Keller*. *See Keller*, 496 U.S. at 13–14; *McDonald*, 4 F.4th at 247. Given that *Keller* based these purposes on the analysis set forth in *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977)—a case *Janus* expressly overturned—this Court should confine itself to purposes as described and applied in *Keller* and no other. *See Crowe*, 989 F.3d at 725.

Plaintiffs object to the Recommendation's determination that all OSB conduct at issue in this case is germane because it was congruent with OSB's statutory purpose, its "mission," or its bylaws. *See* Recommendation at 14–15. The two statements published in the April 2018 edition of the Oregon State Bar Bulletin and multiple specific instances of OSB's legislative advocacy—whether or not they are related to OSB's statutory purpose or its bylaws—are not germane under

---

[1] The plaintiffs in *Gruber v. OSB*, Case No. 3:18-cv-1591-JR, take a different position, but the *Crowe* action is postured differently, with discovery complete.

PLS.' OBJ. TO MAGISTRATE'S FINDINGS & RECOMMENDATION - 2

the test set forth in *Keller*. The Recommendation largely ignores that allegation and reformulated the germaneness requirement as relating to the purpose or "mission" Oregon's legislature assigned to OSB, not to the two purposes identified in *Keller* as justifying mandatory bar associations.

### A. The April 2018 Bar Bulletin Statements are nongermane as neither relates strictly to the regulation of lawyers *qua* lawyers or the lawyer's role in improving the quality of legal services.

Plaintiffs object to the Recommendation's finding that the two OSB Bar Bulletin Articles from April 2018 were germane to OSB's mission. Recommendation at 12–15. The Recommendation did not analyze whether the two statements were germane to the two purposes identified in *Keller*: the regulation of lawyers or the lawyer's role in the improvement of the quality of legal services. Instead, the Recommendation simply concluded that "the statements fall within a compelling and legitimate OSB mission," citing Or. Rev. Stat. § 9.080. Recommendation at 14, 17–18.

But highly charged political statements about "white nationalism" and President Trump are far afield from the any interest the government might have in regulating lawyers. These statements deplore an alleged rise of white nationalism in the United States, and do so in a manner designed to imply that President Trump was at least partly responsible and that those who supported his candidacy and policies also support white nationalism. *See* Plaintiffs' MSJ at 18 (Doc. 80). Plaintiffs, who supported President Trump, disagree with, and are offended by, this insinuation. *See id*. And however noble OSB's intent in condemning perceived racism, the OSB's statements gratuitously interject OSB into a political debate; one not specifically relating to either the regulation of lawyers *as lawyers* or the improvement of legal services. Everyone has a right to an opinion about President Trump and/or white nationalism—and no person can be compelled to subsidize the promulgation of another person's opinion. *See W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943) ("If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their

PLS.' OBJ. TO MAGISTRATE'S FINDINGS & RECOMMENDATION - 3

faith therein."). If these statements are "germane," then the notion of "germaneness" is meaningless, because all kinds of political positions would qualify, given that the proponents of such positions are salutary in some way to "justice."

*Keller* acknowledged that deciding "where the line falls" between germane and nongermane activities would "not always be easy," but that the "extreme ends of the spectrum are clear." 496 U.S. at 15–16. This is an easy case where the conduct falls at the extreme nongermane end of the spectrum. Furthermore, and as argued in Plaintiffs' motion, *Janus* makes this determination even easier, particularly in the context of the associational claim at issue: any conduct that does not clearly constitute germane conduct, i.e., fall at the end of the spectrum from permissible conduct, should be regarded as nongermane, failing exacting scrutiny.

### B. OSB's legislative activity is nongermane because OSB advocated for substantive changes in the law unrelated to the regulation of lawyers.

Plaintiffs object to the Recommendation's explicit resting on OSB's bylaws and OSB's statutory mission in determining that the legislative activity objected to by Plaintiffs was germane. Recommendation at 16–18. Specifically, the Recommendation explains that OSB sends all legislative proposals "to the Board of Governors for *Keller* review to assure that they are related to regulating the legal profession, improving the quality of legal services, supporting the judiciary, improving the administration of justice, or advancing a fair, inclusive and accessible justice system." Recommendation at 18. These are OSB's statutory purposes. *See* Or. Rev. Stat. § 9.080. According to the Recommendation, it is the statutory purposes to which legislative activity must be germane for the legislation to pass constitutional muster, not the two purposes identified in *Keller*. Plaintiffs object to this finding.

OSB made the same argument the Recommendation adopts in their briefs. *See* Defs.' Opp'n at 7–14, 17–21 (Doc. 87); Defs.' MSJ at 15 (Doc. 76). Plaintiffs opposed that argument both in their own Response to OSB's Motion for Summary Judgement and in their Reply in Support of their Motion for Summary Judgement. *See* Pls.' Reply in Support of MSJ at 8–10 (Doc. 93); Pls Resp. to Defs.' MSJ at 8 (Doc. 86). The Recommendation, however, accepts

PLS.' OBJ. TO MAGISTRATE'S FINDINGS & RECOMMENDATION - 4

OSB's argument without analysis and does not acknowledge that this is a contested legal point–a point that potentially controls the outcome of this case as OSB's statutory purposes are much broader than the two accepted purposes in *Keller*.

The argument that the legislative activities, or any other OSB action, are germane under *Keller* so long as they are germane to OSB's statutory purposes misconstrues *Keller*. Under that view, whether a challenged action is constitutionally germane depends on the bar association's statutory purposes.

But this is not what *Keller* said. In *Keller* the Supreme Court recognized only two germane purposes—that is, only two justifications for compulsory membership and compulsory dues: "regulating the legal profession and improving the quality of legal services." 496 U.S. at 13–14. The holding in *Keller* was that forcing lawyers to join and fund a bar association for purposes *other than* these two things would violate the First Amendment rights of lawyers. These two things are not *statutory* purposes—they are *constitutional* boundaries. Indeed, in *Keller*, the *statutory* charge of the California State Bar was "to promote 'the improvement of the administration of justice,'" *Keller v. State Bar of California*, 767 P.2d 1020, 1021 (Cal. 1989) (quoting Cal. Bus. & Prof. Code § 6031(a)), which is a broad commission. But the Supreme Court did not say that the state could force lawyers to fund any "improvement of the administration of justice"—it said the state could only force lawyers to pay for the regulation of lawyers and improving the quality of legal services. In other words, *Keller* rejected the Recommendation's holding. *See* Pls.' Reply in Support of MSJ at 9 (Doc. 93).

Were it otherwise, *Keller* would impose no meaningful limit on state bar associations. Whether a bar association engages in germane activity—and thus, whether it is constitutional— would vary from state to state depending solely on what purposes the state legislature had chosen to insert in the statute. If the Recommendation's reading of *Keller* were correct—the reading advocated for by OSB—and the First Amendment allowed a state bar to force lawyers to join and then still engage in any activity the bar believed appropriate to discharge whatever statutory

PLS.' OBJ. TO MAGISTRATE'S FINDINGS & RECOMMENDATION - 5

function the legislature gave it, *Keller* would impose no meaningful limit on what star bars could demand from lawyers.  This is not what *Keller* held.

Plaintiffs maintain that the legislative advocacy objected to are nongermane because each bill makes substantive changes to the law.  The Fifth Circuit Court of Appeal determined that the Texas bar's legislative activity included lobbying for substantive changes in the law, concluding that "advocating changes to a state's substantive law is *non-germane* to the purposes identified in *Keller*."  *McDonald*, 4 F.4th at 247 (emphasis added). The Fifth Circuit reasoned that "[s]uch lobbying has *nothing to do* with regulating the legal profession or improving the quality of legal services." *Id.* at 247–48 (emphasis added).  It further explained that such "efforts are directed entirely at changing the law *governing* cases, disputes, or transactions in *which attorneys might be involved*." *Id.* at 248 (emphasis in original).  The bills highlighted in Plaintiffs' MSJ and listed in the Recommendation do just that.  The Recommendation, however, failed to consider whether bills that make substantive changes to a state's laws are germane to the purposes identified in *Keller* as the Recommendation evaluated germaneness in relation to OSB's statutory purposes which are much broader than the purposes identified in *Keller*.

Thus, Plaintiffs object both to the expansion of the germaneness test and to the Recommendation's implicit rejection of the argument that advocating changes to a state's substantive laws is generally nongermane and thus unconstitutionally burdens Plaintiffs free association rights.

**II.    The "opt-out procedures" discussed in *Keller* are irrelevant to Plaintiffs' associational claims.**

The Recommendation conflated Plaintiffs' compelled speech claim, which has been dismissed, with Plaintiffs' viable freedom of association claim, erroneously concluding that OSB's refund procedures provide "adequate safeguards … to plaintiffs' assertion of associational rights as well."  Recommendation at 7; *see also* Recommendation at 9 n.5 (claiming that the dues refund procedure allows the member to express his or her dissent with a particular OSB activity and thus disassociate from the forced association); Recommendation at

PLS.' OBJ. TO MAGISTRATE'S FINDINGS & RECOMMENDATION - 6

10 n.6 ("the application for procedures to express a desire to disassociate with certain aspects of a state bar's activity that is nongermane to its purpose provides sufficient protection of associational rights at least where the purported germane activity is incidental to a state bar's legitimate objectives."); Recommendation at 15 (explaining that even if the statements were nongermane "the OSB provides adequate safeguards to prevent associational harms by granting a process through which members can disassociate from the expression."); Recommendation at 18 (explaining that even if any legislative activity is nongermane "the process by which the OSB develops legislative priority proposals provides ample opportunity for members to utilize the procedural safeguards … to make any objections and seek appropriate relief.").

The refund procedures referenced in *Keller*, used by OSB, and called into question by *Janus*, however, apply only in the context of compelled speech through financially subsidizing nongermane activities. *See Janus*, 138 S. Ct. at 2482 (stating that "the *Hudson* notice in the present case and in others that have come before us do not begin to permit" members to determine whether their First Amendment rights have been violated). Plaintiffs object to the Recommendation's conclusions that the dues refund procedure is in any way relevant to Plaintiffs' freedom of association claim. *See Crowe*, 989 F.3d at 729.

Objecting to having one's dues used for unconstitutional purposes, and having a tiny portion of those dues refunded by a bar association that nevertheless maintains it did nothing wrong, does nothing to redress Plaintiffs' associational injury. Indeed, as the Ninth Circuit stated in *Crowe*, the associational claim arises "independent of compelled financial support." *Id.* This makes sense because even if members object to subsidizing the bar's activities, they remain members and associated with it, even if the bar later refunds a tiny portion of their dues and even if the bar claims to have expended no member dues on the objected to activity.[2]

---

[2] To be sure, Plaintiffs originally pled that the compelled financial support of the OSB violated their free speech rights, and Plaintiffs still maintain that compelled financial support is a constitutional injury in and of itself. Plaintiffs recognize this claim is foreclosed by the Ninth Circuit's ruling in *Crowe* but preserve the issue for appellate review.

PLS.' OBJ. TO MAGISTRATE'S FINDINGS & RECOMMENDATION - 7

No sum can compensate a person for being forced to join and remain a member of a political or ideologically oriented organization with whose missions he or she disagrees. And the simple opportunity to object to a committee about the activities taken cannot adequately cure the continued forced association with the organization that undertakes such activity.[3]

Thus, Plaintiffs object to the Recommendation's attempt to extend a procedure explicitly linked to dues paying to a claim for forced association where dues paying is irrelevant.

### III. The Recommendation Misreads *Schell*.

On remand, the Ninth Circuit instructed that the district court evaluate whether *Janus* provides the standard for evaluating a free association claim challenging compelled membership in a bar association. *Crowe*, 989 F.3d at 729. The Recommendation erroneously concludes that *Schell v. Chief Justice & Justices of Oklahoma Supreme Court*, 11 F.4th 1178 (10th Cir. 2021), rejected the "exacting scrutiny" standard used in *Janus* and *McDonald*, stating that "*Janus* and its 'exacting scrutiny' standard did not displace *Keller* and its germaneness standard, *even for associational rights claims*." Recommendation at 7 (citation omitted; emphasis added). *Schell* does not state this.

*Schell* involves a challenge to Oklahoma's mandatory bar, raising compelled speech and compelled association claims similar to the claims raised here. On appeal from the district court's granting of the Oklahoma bar's motion to dismiss, the Tenth Circuit Court of Appeals reversed as to the plaintiff's compelled association claim. The language in *Schell* declining to follow *Janus* relates only to the compelled speech claim brought in *Schell*, the dismissal of which the Tenth Circuit affirmed. *Schell*, 11 F.4th at 1191 (following *Keller* regarding plaintiff's challenge to "the constitutionality of mandatory bar dues" and affirming the dismissal of that count of the complaint). *Schell* says nothing about the application of *Janus*'s exacting scrutiny

---

[3] The Recommendation incorrectly asserts that *McDonald* "examined whether procedural safeguards would negate an infringement upon associational rights." Recommendation at 15, citing to *McDonald*, 4 F.4th at 252–54. But the opinion says nothing of the sort. *McDonald* raised compelled speech and associational claims, with the opt-out procedures discussed in the context of the compelled speech claim, i.e., the forced financial subsidy of the Texas bar.

PLS.' OBJ. TO MAGISTRATE'S FINDINGS & RECOMMENDATION - 8

standard to the plaintiff's associational claim, which the Tenth Circuit remanded for further discovery. *Id.* at 1195.

In any event, the "germaneness" construct used in *Keller* and an exacting scrutiny standard are not mutually exclusive concepts, as the Fifth Circuit demonstrated in *McDonald*. In *McDonald*, the court assessed the germaneness of the Texas bar's conduct, concluding that nongermane conduct necessarily failed exacting scrutiny. *McDonald*, 4 F.4th at 246–47. Meaning, under *Janus* a mandatory bar association unconstitutionally violates a member's right to free association by engaging in conduct not germane to regulation of lawyers or the lawyer's role in improving the quality of legal services. By engaging in nongermane activity, a mandatory bar association fails exacting scrutiny.

Plaintiffs thus object to the Recommendation's determination that *Janus* has no effect on free association challenges to mandatory bar associations.

### IV. *Lathrop* did not address the broad associational claim at issue here and its dicta did not create a "major activity" exception.

Citing *Lathrop*, the Recommendation implies that OSB may engage in nongermane activities that do not infringe upon Plaintiffs' right of freedom of association so long as the bar's conduct is "minor.' Recommendation at 8. As Plaintiffs argued in the summary judgment briefing, however, no such "major activity" exception exists. Pls.' Resp. to Defs.' MSJ at 12 (Doc. 86).

The Ninth Circuit concluded that *Lathrop*, "merely permitted states to compel practicing lawyers to pay toward the costs of regulating their profession." *Crowe*, 989 F.3d at 728. It did not address the broader freedom of association claim at issue here. *Id.* at 727.

*Lathrop* did not establish any sort of "major" or "minor" activity standard for actionable nongermane activities. It "held that lawyers may constitutionally be mandated to join a bar association that solely regulates the legal profession and improves the quality of legal services." *McDonald*, 4 F.4th at 244; *Crowe*, 989 F.3d at 728.

## CONCLUSION

For the reasons set forth above, Plaintiffs object to the Recommendation. After evaluating the undisputed evidence of OSB's conduct, the Court should conclude that OSB engaged in nongermane conduct. Following the Fifth Circuit's analysis of the associational claim in *McDonald*, the Court should conclude that OSB's nongermane conduct fails exacting scrutiny. Accordingly, the Court should grant Plaintiffs' motion for summary judgment and should deny OSB's motion for summary judgment.

**RESPECTFULLY SUBMITTED** this 23rd day of January 2023 by:

/s/ *Scott Day Freeman*
Scott Day Freeman (Appearing *pro hac vice*)
Adam C. Shelton (Appearing *pro hac vice*)
**Scharf-Norton Center for Constitutional Litigation at the GOLDWATER INSTITUTE**

Luke D. Miller (#175051)
**MILITARY DISABILITY LAWYER, LLC**

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

Document Electronically Filed and Served by ECF this 23rd day of January 2023 to:

Kristin Asai
**HOLLAND & KNIGHT LLP**
601 SW Second Ave., Ste. 1800
Portland, OR 97204
Kristin.asai@hklaw.com

Steven M. Wilker
Paul M. Balmer
**TONKON TORP LLP**
888 SW Fifth Avenue, Ste. 1600
Portland, OR 97204
Steven.wilker@tonkon.com
Paul.balmer@tonkon.com

W. Michael Gillette
**SCHWABE, WILLIAMSON & WYATT**
1211 SW Fifth Avenue, Ste. 1900
Portland, OR 97204
wmgillette@schwabe.com

*Attorneys for Defendants*

/s/ *Kris Schlott*
Kris Schlott, Paralegal
**Scharf-Norton Center for Constitutional Litigation**
**at the GOLDWATER INSTITUTE**