IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DANIEL Z. CROWE**; **OREGON CIVIL LIBERTIES ATTORNEYS**; and **LAWRENCE K. PETERSON**,<br><br>Plaintiffs,<br><br>v.<br><br>**OREGON STATE BAR,** *et al*.,<br><br>Defendants. | Case No. 3:18-cv-2139-JR<br><br>**ORDER** |

**Michael H. Simon, District Judge.**

Plaintiffs in this case are current and former members of the Oregon State Bar (OSB) and an organization consisting of such members. Membership in the OSB is required to practice law in the state of Oregon. Plaintiffs originally challenged the compulsory membership and fee structure of the bar, alleging that it violated their rights to freedom of speech and association under the First Amendment, made applicable to the states by the Due Process Clause of the Fourteenth Amendment.

The Ninth Circuit affirmed dismissal of Plaintiffs' free speech claim but remanded the dismissal of Plaintiff's associational rights claim because neither the United States Supreme Court nor the Ninth Circuit has yet directly addressed a broad claim of freedom of association

PAGE 1 – ORDER

based on mandatory bar membership in "an integrated bar that engages in nongermane political activities." *Crowe v. Or. State Bar*, 989 F.3d 714, 729 (9th Cir. 2021). In that decision, the Ninth Circuit noted that the district court would need to resolve what standard governs an associational rights claim in this context, whether the "germaneness" standard articulated in *Keller v. State Bar of California*, 496 U.S. 1 (1990), for speech in the context of mandatory bar dues also applies to an associational rights claim, and how the OSB's activities fare under this claim. Before the Court resolved these questions on remand, Plaintiffs Diane L. Gruber and Mark Runnels in the related case of *Gruber v. Oregon State Bar*, Case No. 3:18-cv-1591-JR, filed an early motion for summary judgment, arguing that there are no material disputed issues of fact and that the OSB's compulsory membership requirement violates their associational rights. The Court followed the Tenth Circuit's reasoning in *Schell v. Chief Justice & Justices of Oklahoma Supreme Court*, 11 F.4th 1178 (10th Cir. 2021), *cert. denied sub nom. Schell v. Darby*, 142 S. Ct. 1440 (2022), and concluded that the applicable standard of review for an associational rights claim in this context is the germaneness framework. *Gruber v. Oregon State Bar*, 2022 WL 1538645, at *3 (D. Or. May 16, 2022). The Court also determined that a claim asserting that simply being required to participate in an integrated bar violates associational rights is insufficient and Plaintiffs must instead show nongermane activity that rises to the level of a constitutional violation. *Id.* at *4-5. Thus, the Court denied Plaintiffs Gruber and Runnels' motion for summary judgment. *Id.* at *5.

   Plaintiffs in this case brought by Crowe and others then moved for summary judgment on their associational rights claim. Defendants filed their own motions for summary judgment on all claims in both lawsuits. U.S. Magistrate Judge Jolie A. Russo issued a Findings and

Recommendation (F&R) on December 19, 2022, recommending that this Court deny Plaintiffs' motion and grant Defendants' motions.[1] Plaintiffs filed objections.

**A. Standards**

Under the Federal Magistrates Act (Act), the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). If a party objects to a magistrate judge's findings and recommendations, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3).

For those portions of a magistrate judge's findings and recommendations to which neither party has objected, the Act does not prescribe any standard of review. *See Thomas v. Arn*, 474 U.S. 140, 152 (1985) ("There is no indication that Congress, in enacting [the Act], intended to require a district judge to review a magistrate's report to which no objections are filed."); *United States. v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (holding that the court must review de novo magistrate judge's findings and recommendations if objection is made, "but not otherwise"). Although in the absence of objections no review is required, the Act "does not preclude further review by the district judge[] *sua sponte* . . . under a *de novo* or any other standard." *Thomas*, 474 U.S. at 154. Indeed, the Advisory Committee Notes to Fed. R. Civ. P. 72(b) recommend that "[w]hen no timely objection is filed," the Court review the magistrate judge's recommendations for "clear error on the face of the record."

---

[1] The F&R addresses Defendants' motions for summary judgment filed in this case and the related case, *Gruber v. Oregon State Bar*, Case No. 3:18-cv-1591-JR, as well as the motion for summary judgment filed by the plaintiffs in this case. Because the objections and arguments in *Gruber* are different than the objections and arguments filed in this case, the Court issues separate Orders in these two cases.

PAGE 3 – ORDER

B. Analysis

    1. **Standard of Review for Plaintiffs' Claims**

Plaintiffs argue that the F&R erred by applying the "germaneness" standard of *Keller* instead of the "exacting scrutiny" standard of *Janus v. American Federation of State, County, Municipal, Employees, Council 31*, 138 S. Ct. 2448 (2018). The Court has already rejected this argument in its Opinion and Order resolving Plaintiffs Gruber and Runnels' motion for summary judgment, when the Court determined that *Keller's* germaneness standard applied to Plaintiffs' associational rights claim, relying on *Schell*. *See Gruber*, 2022 WL 1538645, at *3. Plaintiffs now argue that the F&R (and therefore the Court in its previous Opinion and Order) misread *Schell*. The Court disagrees.

*Schell* reviewed relevant Supreme Court caselaw and concluded that the germaneness standard applies to the plaintiff's free speech and associational rights claim, and not the exacting scrutiny standard of *Janus*. *See Schell*, 11 F.4th at 1186-91. The Tenth Circuit in *Schell* then stated: "In assessing whether the non-time-barred allegations in Mr. Schell's Amended Complaint are sufficient to advance a claim for a free speech or freedom of association violation, we consider the germaneness of the alleged activities to the valid goals and purposes of the OBA." *Id.* at 1192. The Tenth Circuit next evaluated the specific allegations and determined that the plaintiff had failed to state an associational rights claim based on all of the alleged articles published by the integrated bar except two, which were not in the record and were unable to be reviewed to see if their content complied with the Supreme Court's requirements for germaneness. *Id.* at 1192-94. The court in *Schell* remanded the plaintiff's associational rights claim for further proceedings, including discovery to determine if the two articles were nongermane and whether those two articles alone would be sufficient to state an associational rights claim, considering *Lathrop*, stating: "Once the discovery is complete, if defendants seek

PAGE 4 – ORDER

summary judgment, the district court will need to apply the test from *Keller* to determine whether the articles are germane to the accepted purposes of the state bar. And, if the articles are not germane, the district court will need to assess whether Mr. Schell may advance a freedom of association claim based on these two articles." *Id.* at 1194-95 (footnote discussing *Lathrop* omitted).

The Tenth Circuit's opinion in *Schell* is clear that it applied the germaneness standard, without exacting scrutiny, for its review of the plaintiff's associational rights claim and that it instructed the district court to apply the germaneness test upon remand. Based on this reading and the persuasive authority of *Schell*, the Court rejects Plaintiffs' argument that the Court misread *Schell* and that the Court should consider germaneness by also applying exacting scrutiny.

### 2. Nongermane Activity

Plaintiffs also object that the F&R incorrectly determined that they failed to show that the OSB engaged in nongermane behavior. Plaintiffs argue that the OSB's legislative activity is nongermane, as well as the April 2018 statements published in the *Bar Bulletin* by the OSB and by the specialty bar associations.

#### a. Legislative Activity

Plaintiffs argue that the F&R applied the incorrect standard in evaluating whether the challenged legislative activity was nongermane. Plaintiffs contend that under *Keller*, the legislative activity must be related to regulating the legal profession or improving the quality of legal services. Plaintiffs argue that the F&R considered that before lobbying any particular piece of legislation, the OSB has each piece of legislation reviewed for whether it meets OSB's statutory purposes. These purposes include, as relevant to the pending motion, supporting the

PAGE 5 – ORDER

judiciary, improving the administration of justice, and advancing a fair, inclusive, and accessible justice system.

The Supreme Court in *Keller* acknowledged that regulating the legal profession and improving the quality of legal services is a spectrum and not easy to delineate. *Keller*, 496 U.S. at 14-15. The acceptable types of activities are "acting essentially as professional advisers to those ultimately charged with the regulation of the legal profession" and the unacceptable are "those activities having political or ideological coloration *which are not reasonably related to the advancement of such goals*." *Id.* at 15 (emphasis added).

Plaintiffs do not explain how supporting the judiciary, improving the administration of justice, or advancing a fair, inclusive, and accessible justice system do not fall within the acceptable spectrum. Indeed, other federal appellate courts have concluded that specific articles and initiatives falling within these categories are germane. The Tenth Circuit in *Schell* held that articles relating to warning the public about the harms of politics in the judicial system was germane because "promotion of the public's view of the judicial system as independent enhances public trust in the judicial system and associated attorney services." *Schell*, 11 F.4th at 1193. The court ruled that an article on how judges are appointed "involve[d] the structure of the court system" and was therefore germane. *Id.* The Tenth Circuit also explained that articles advocating for the role of attorneys in the legislature were germane because "they promote the important role of the OBA's attorney members in using their professional skills to interpret and advise on pending legislation" and they "are not inherently political or ideological in nature." *Id.*

The Fifth Circuit similarly ruled that diversity initiatives, "though highly ideologically charged" were germane because they were "aimed at creating a fair and equal legal profession for minority, women, and LGBT attorneys, which is a form of regulating the legal profession."

PAGE 6 – ORDER

*McDonald v. Longley*, 4 F.4th 229, 249 (5th Cir. 2021), *cert. denied sub nom. McDonald v. Firth*, 142 S. Ct. 1442 (2022). That court also concluded that these initiatives "help to build and maintain the public's trust in the legal profession and the judicial process as a whole," which is an improvement in the quality of legal services." *Id.* The court additionally explained that the bar's activities aimed at helping the needy were germane because they increased access to justice for person who could not otherwise afford counsel, even for noncitizen immigrants, which is a politically-charged issue, particularly in Texas. *Id.* at 250. The Fifth Circuit further noted that administrative duties, such as "the Bar's advocating a particular ethical rule is germane no matter how strenuously an attorney might disagree with its propriety." *Id.* at 250.

The OSB's statutory goals challenged by Plaintiffs as falling outside of the rubric of *Keller* generally fall within these types of issues accepted by the Fifth and Tenth Circuits as germane. They are issues involving the judiciary; a fair, inclusive, and accessible justice system; and improving the administration of justice. They relate to regulating the legal profession and improving the quality of legal services.

More importantly, the issue at summary judgment is not whether the OSB has a procedure in place (such as screening bills to ensure they comply with the OSB's statutory goals and therefore comply with *Keller*) that may hypothetically prevent associational harms, but whether Plaintiffs have provided *evidence* that the OSB has engaged in nongermane activity and, if so, whether that nongermane activity violates Plaintiffs' associational rights. Plaintiffs do not assert in their objection any particular legislative activity that they contend the F&R erroneously concluded was germane. Plaintiffs argue generally that the Court should follow the analysis of the Fifth Circuit in *McDonald* and conclude that any bill that was substantive and did not involve

PAGE 7 – ORDER

the role of attorneys is nongermane. Plaintiffs do not, however, identify any bill they contend would fall under such analysis.

Further, the Court does not find the reasoning of *McDonald* persuasive for its broad conclusion that advocating for changes to a state's substantive law is nongermane. The Fifth Circuit stated that such lobbying has "nothing to do with regulating the legal profession or improving the quality of legal services. Instead, those efforts are directed entirely at changing the law *governing* cases, disputes, or transactions *in which attorneys might be involved*." *McDonald*, 4 F.4th at 247-48 (emphasis in original). The Fifth Circuit concluded that the only substantive bills for which lobbying would be germane would be "legislation regarding the functioning of the state's courts or legal system writ large" or "advocating for laws governing the activities of lawyers *qua* lawyers." *Id.* at 248. Many other types of substantive bills, however, may be relevant to improving the quality of legal services and regulating the profession. As the *McDonald's* court's discussion of other services by the bar demonstrated, there are issues that affect the public's trust in the justice system, the ability to provide services to the needy, and other issues that may not fall within this narrow definition of germaneness established for lobbying.

Additionally, the Fifth Circuit in *McDonald* provided a list of lobbying activities that would be acceptable, based on the Supreme Court's decision in *Lathrop*, and that list is inconsistent with the conclusion in *McDonald* of acceptable lobbying. The Fifth Circuit provided as general examples of the type of lobbying that *would* pass the germaneness test: the salaries of state court judges; amending statutes to compensate attorneys differently; court reorganization; extending personal jurisdiction over nonresidents; allowing the recording of unwitnessed conveyances; allowing use of deceased partners' names in firm names; revising the law

governing federal tax liens; addressing law clerks for State Supreme Court justices; addressing securities transfers by fiduciaries; addressing the jurisdiction of county courts over the administration of *inter vivos* trusts; and setting special appropriations for research for the State Legislative Council. *McDonald*, 4 F.4th 248 n.23. Some of these, however, do not fall within the Fifth Circuit's express holding, such as securities transfers by fiduciaries.

The Court also disagrees with the Fifth Circuit's ultimate conclusion in *McDonald* that the mere fact that an integrated bar engages in "some" nongermane activity means that the bar violates associational rights under the First Amendment, without considering whether there is a threshold, or *de minimus*, amount of nongermane activity that is acceptable. *See id.* at 251. The Supreme Court in *Lathrop* expressly relied on the fact that only some degree of the integrated bar's activity was potentially improper, and not the "bulk" or "major" portion of the bar's activity.[2] *See Lathrop*, 367 U.S. at 843 (relying on the fact that "the *bulk* of State Bar activities serve" the legitimate functions of the bar association in concluding that compelled membership in the state bar did not "impinge[ ] upon protected rights of association" (emphasis added)); *see also id.* at 839 (noting that the challenged activity is not "major" activity of the integrated bar).

Most importantly, however, the Court has reviewed *de novo* all the legislative activity challenged by Plaintiffs and finds that the entirety is within the spectrum of improving the quality of legal services or regulating the legal profession. They are not inherently political or ideological in nature. Thus, Plaintiffs' argument that they are nongermane is rejected. The Court adopts this portion of the F&R.

---

[2] Plaintiffs also object that *Lathrop* did not create any exception for some degree of nongermane activity, and the Court rejects this objection.

PAGE 9 – ORDER

b.  **Statements in the *Bar Bulletin***

Plaintiffs object that two statements published in the April 2018 *Bar Bulletin* are nongermane. The first statement, "White Nationalism and Normalization of Violence," was issued by the OSB. The Court has reviewed this statement, and agrees with Judge Russo that it is germane. The statement emphasizes the rule of law, the equal protection of the laws, and the importance of a justice system that is accessible to all and does not include racial discrimination or the acceptability of violence. The statement was "aimed at creating a fair and equal legal profession . . . which is a form of regulating the legal profession" and "help[s] to build and maintain the public's trust in the legal profession and the judicial process as a whole." *McDonald*, 4 F.4th at 249-50; *see also Schell*, 11 F.4th at 1193 (finding that conduct that "enhances public trust in the judicial system and associated attorney services" is germane). The statement also is focused on access to justice, which is germane. *McDonald*, 4 F.4th at 250. The statement does not contain inherently political or partisan statements. Even if allusions to racism, white nationalism, and violence can be construed as inflammatory or ideological that does not mean they are nongermane, because they are still "reasonably related to the advancement" of the acceptable goals of the bar. *See Keller*, 496 U.S. at 15; *see also McDonald*, 4 F.4th at 249-50 (recognizing that topics that are "controversial," "highly ideologically charged," involving "a sensitive political topic," and "politically charged" can be germane (cleaned up)).

Plaintiffs also object that the specialty bar section's "Joint Statement of the Oregon Specialty Bar Associations Supporting the Oregon State Bar's Statement on White Nationalism and Normalization of Violence" is nongermane. As the F&R acknowledged, this statement contains politically inflammatory statements regarding former President Donald Trump. Viewing the facts in the light most favorable to the nonmoving party, there is at least an issue of fact whether this statement was nongermane, and thus the Court does not adopt this discussion in the

PAGE 10 – ORDER

F&R. The Court, however, has rejected Plaintiffs' assertions regarding the other nongermane conduct. The Court therefore need not precisely delineate the acceptable threshold for nongermane activity contemplated by *Lathrop*, because whatever that threshold may be, a single statement (or even two statements) will not meet it.

### 3. Opt-out Procedures

Plaintiffs object that the opt-out procedures for a bar member to disassociate from speech to which they disagree is irrelevant to their associational rights claims, which are not based on the payment of dues. Because the Court finds that far more than the "bulk" of the OSB's activities were germane and the OSB's conduct does not violate Plaintiffs' associational rights under the First Amendment, the Court declines to address this objection or adopt this portion of the F&R.

### 4. No Objections

For those portions of the F&R to which Plaintiffs did not object, the Court follows the recommendation of the Advisory Committee and reviews Judge Russo's F&R for clear error on the face of the record. No such error is apparent. Accordingly, the Court adopts those portions of the F&R.

## C. Conclusion

The Court ADOPTS IN PART the Findings and Recommendation, ECF 94, as supplemented herein. The Court DENIES the Motion for Summary Judgment filed by Plaintiffs, ECF 80. The Court GRANTS the Motion for Summary Judgment filed by Defendants, ECF 76.

**IT IS SO ORDERED.**

DATED this 14th day of February, 2023.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge